The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Calvin L. CHAUSSEE II and Claude Ray Page, Defendants–Appellees.

No. 91CA0686.

Colorado Court of Appeals, Div. IV.

June 25, 1992.

Rehearing Denied Aug. 20, 1992.

Certiorari Granted Feb. 22, 1993.

* Sitting by assignment of the Chief Justice under provisions of the Colo.Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

John W. Suthers, Dist. Atty., Lovice D. Riffe, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Phillip A. Vaglica, Colorado Springs, for defendant-appellee Calvin L. Chaussee II.

J. Tyler Makepeace, Colorado Springs, for defendant-appellee Claude R. Page.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Marleen Langfield, Asst. Atty. Gen., Denver, for amicus curiae.

Opinion by Judge JONES.

The People appeal the trial court's order, in a preliminary hearing, dismissing charges brought against defendants, Calvin L. Chaussee II and Claude Ray Page, for violation of the Colorado Organized Crime Control Act (COCCA). In addition, the People appeal the court's reduction of first degree perjury charges against defendant Chaussee to second degree perjury. We affirm in part, reverse in part, and remand with directions.

Over the period from February 1986 to April 1987, defendants, through a corporation named Colorado Springs Future Communications (CSFC), were ostensibly engaged in marketing dealerships for the sale of phased-array satellite television antennas and associated electronics. Hundreds of individuals purchased the dealerships,

which required payment of a $1,500 deposit that was to be placed in escrow and refunded at $100 per unit sold. None of the deposit money, however, was actually refunded or placed in escrow, but was instead directed to another enterprise, or was used to fund the sales of additional dealerships.

Defendants claimed a manufacturing capability of 10,000 units per week, and CSFC bank records indicate that, between February 1986 and March 1987, a total of approximately $2,280,000 was paid for dealerships. In reality, the phased-array antenna marketed by defendants did not exist.

In April 1987, the El Paso County District Attorney filed a lawsuit requesting injunctive relief and restitution under COCCA. In response to requests for discovery, defendants submitted documents which the prosecution alleges are forged and other answers alleged to be materially false. These incidents in the discovery process were the basis for the perjury charges in this criminal case.

A preliminary hearing was held wherein the trial court dismissed the COCCA counts on the grounds that the People had failed to establish probable cause for the existence of a pattern of racketeering activity as defined pursuant to § 18–17–103(3), C.R.S. (1986 Repl.Vol. 8B). In addition, the court reduced the first degree perjury charges to second degree perjury on the grounds that the false statements were written, rather than verbal. This appeal followed.

## I.

The People contend that the trial court erred when it failed to find probable cause that defendants had violated the provisions of COCCA. They argue that the court incorrectly dismissed their claims based upon its ruling that the evidence failed to establish the "pattern of racketeering activity" needed to establish a COCCA claim. We agree.

In order to state a claim for relief under any provision of COCCA, a plaintiff or prosecutor must prove that a defendant engaged in, or benefitted from, a "pattern of racketeering activity." Section 18–17–104, C.R.S. (1986 Repl.Vol. 8B). A pattern of racketeering activity is defined, under COCCA, in relevant part, as follows:

(3) 'Pattern of racketeering activity' means engaging in at least two acts of racketeering activity which are related to the conduct of the enterprise, if at least one of such acts occurred in this state after July 1, 1981, and if the last of such acts occurred within ten years (excluding any period of imprisonment) after a prior act of racketeering activity.

. . . .

(5) 'Racketeering activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:

(a) Any conduct defined as 'racketeering activity' under 18 U.S.C. 1961(1)(A), (1)(B), (1)(C), and (1)(D); or

(b) Any violation of the following provisions of the Colorado statutes or any criminal act committed in any jurisdiction of the United States which, if committed in this state, would be a crime under the following provisions of the Colorado statutes:

(II) Offenses against property, as defined in section . . . 18–4–401 (theft) . . .;

(IV) Offenses involving fraud, as defined in section . . . 18–5–103 (second degree forgery) . . .;

(VII) Offenses involving governmental operations, as defined in sections . . . 18–8–502 (first degree perjury), 18–8–503 (second degree perjury) . . . 18–8–610 (tampering with physical evidence). . . .

Section 18–17–103, C.R.S. (1986 Repl.Vol. 8B).

Defendants were charged with two counts of racketeering activity involving illegal use of an enterprise pursuant to § 18–17–104, C.R.S. (1986 Repl.Vol. 8B); theft pursuant to § 18–4–401, C.R.S. (1986 Repl.Vol. 8B); and conspiracy to commit theft pursuant to § 18–2–201, C.R.S. (1986 Repl.Vol. 8B). They were also charged with first degree perjury, tampering with physical evidence, and second degree forgery. Sections 18–8–502(1), 18–8–610(1)(b),

and 18–5–103(1)(a), C.R.S. (1986 Repl.Vol. 8B).

To establish a claim under COCCA, § 18–17–103, C.R.S. (1986 Repl.Vol. 8B), the prosecution was required to establish probable cause that "at least two" of the charged offenses had occurred within a ten-year period and that they were related to the conduct of the enterprise.

■ We note initially that, for purposes of determining whether a pattern of racketeering activity has occurred, absent a prior interpretation by our state courts, federal case law construing the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (1988) (RICO) is instructive because COCCA was modeled after the federal Act. *Benson v. People,* 703 P.2d 1274 (Colo.1985) (fn.1).

### A.

■ The People contend that the trial court erred in ruling that the People had failed to establish probable cause for a COCCA claim on the grounds that a single scheme to market dealerships to sell a single product cannot be carved into the predicate acts needed to establish a pattern of racketeering activity under COCCA. The trial court relied on *Savastano v. Thompson Medical Co.,* 640 F.Supp. 1081 (S.D.N.Y.1986) in declining to find that defendants' acts constituted a "pattern" under the provisions of COCCA. In our view, the district court's reliance on *Savastano* was misplaced.

The *Savastano* court was guided by the United States Supreme Court's holding in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), and its progeny. In *Sedima,* the Court observed that a pattern of racketeering activity which "requires at least two acts of racketeering activity" implies that two isolated acts do not constitute a pattern under the federal RICO statute because a pattern requires continuity plus relationship. The Court undertook to define the "pattern of racketeering" requirement by reference to the RICO statutory language: " '[C]riminal conduct forms a pattern if it embraces criminal acts that have the same

or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events'. 18 U.S.C. § 3575(e)." *Sedima, S.P.R.L. v. Imrex Co., supra* (fn. 14).

Courts which have subsequently sought to interpret *Sedima's* definition of a RICO pattern have generally split on the issue of whether RICO's "pattern" requirement was satisfied by multiple predicate acts or whether it required multiple schemes. *See H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Court addressed this split in the *H.J. Inc.* case in which it held that proof of racketeering activity requires at least two related racketeering predicates, either acts or schemes, *and* that these predicates must either repeat over a "closed" period of time or must threaten, explicitly or implicitly, the likelihood of continued racketeering activity projecting into the future.

The ruling in *Savastano v. Thompson Medical Co., supra,* on which the trial court, here, relied, in declining to find that the defendant's acts constituted a pattern, is based on what was found to be a single act consisting of numerous misrepresentations regarding a single product. However, these facts, in the *Savastano* case, do not constitute the individual predicate acts recurring in time as later contemplated in *H.J. Inc.*

Here, we address what the record reflects to have been, indeed, numerous criminal predicate acts designed to defraud individual investors in a non-existent product with no apparent indication that such activity would have terminated but for the institution of legal proceedings. Thus, the "pattern of racketeering activity" contemplated in *H.J. Inc.* is satisfied and the trial court was incorrect, as a matter of law, in finding no continuity plus relationship in the defendants' actions.

Furthermore, the *Savastano* court cited a case analogous to the case at hand, *Papagiannis v. Pontikis,* 108 F.R.D. 177 (N.D.Ill.1985), wherein the court held that a

malefactor's perpetration of fraudulent activities on more than one victim, while following the same modus operandi, is clearly a "pattern" for RICO purposes. A similar "pattern of racketeering activity" consisting of multiple fraudulent acts perpetrated upon multiple victims was envisioned by the Court in *H.J. Inc.*:

> Suppose a hoodlum were to sell 'insurance' to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the 'premium' that would continue their 'coverage.' Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity. In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.

▆ For purposes of establishing probable cause, evidence introduced at a preliminary hearing must be sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime. *People v. Juvenile Court*, 813 P.2d 326 (Colo.1991).

Here, the People have presented evidence of multiple fraudulent acts perpetrated upon multiple individuals which threatened to repeat indefinitely. This evidence is sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendants had committed "a pattern of racketeering activity" as enunciated in *H.J. Inc. v. Northwestern Bell Telephone Co., supra. See People v. Juvenile Court, supra.* Thus, probable cause for COCCA charges was established and, accordingly, the trial court erred in dismissing the COCCA claims.

## B.

▆ The People contend that the trial court erred in ruling that defendants' alleged acts of perjury and forgery in the course of civil discovery did not relate to the conduct of defendants' enterprise for purposes of satisfying the COCCA "pattern of racketeering activity" requirement. We disagree.

To establish probable cause for a COCCA claim here, sufficient evidence must be presented to induce the probable belief that defendants engaged in a pattern of racketeering activity "related to the conduct of the enterprise" within a ten-year period. Section 18–17–103, C.R.S. (1986 Repl.Vol. 8B).

This relationship requirement needed to establish a COCCA claim is also required to establish a claim under RICO, and both the *Sedima* court and the *H.J. Inc.* court refer to another provision of RICO for guidance in interpreting the relationship requirement:

> Congress defined Title X's pattern requirement solely in terms of the relationship of the defendant's criminal acts one to another: 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar *purposes, results, participants, victims,* or *methods of commission,* or otherwise are interrelated by distinguishing characteristics and are not isolated events.' 18 U.S.C. § 3575(e).

*H.J. Inc. v. Northwestern Bell Telephone Co., supra* (emphasis added).

Here, the perjury and forgery which are alleged to have occurred were in response to civil discovery. The People submitted evidence in support of their claim that these acts were related to the "enterprise" in that they were undertaken with the purpose of preventing discovery of the defendants' prior fraudulent activities.

We conclude, based on the record here, that while the forgery and perjury may be "related" to defendants' initial fraudulent undertakings, they, nevertheless, are not related to the initial acts "one to another" as contemplated by the Court in *H.J. Inc.*

The perjury and forgery were neither undertaken with the same *purpose* as defendants' initial fraudulent dealership activities, nor were they undertaken with the intention of achieving the same *results,* and they employed different *methods of commission.*

In addition, these subsequent acts did not involve the *victims* involved in defendants' earlier acts and, thus, the perjury and forgery did not involve the same *participants* as the earlier fraudulent acts. Rather than being "interrelated" with the initial pattern of racketeering activity, these subsequent acts are in the nature of "isolated events."

Moreover, were we to consider such predicate acts of perjury and forgery undertaken in the course of discovery to form a COCCA "pattern" when considered together with any other fraudulent activities, *any* illegalities uncovered in the course of discovery in a civil proceeding could be used to establish a COCCA charge. Such an interpretation would be adverse to the General Assembly's express intent specifically to seek the eradication of "organized crime" under this statutory scheme. Section 18–17–102, C.R.S. (1986 Repl.Vol. 8B).

Accordingly, we perceive no error in the trial court's findings and conclusions that defendants' alleged perjury and forgery in the course of civil discovery did not constitute predicate acts in a pattern of racketeering activity under COCCA. However, in so holding, we do not express the opinion that such alleged acts cannot independently form the basis for criminal charges apart from those acts charged under COCCA.

## II.

The People also contend that the trial court erred in ruling that false answers to interrogatories pursuant to civil discovery constitute perjury in the second degree, rather than first degree perjury. They argue that interrogatories are incorporated within the term "official proceeding" because the Colorado Rules of Civil Procedure "govern all proceedings brought after they take effect," and discovery rules are included in the rules of civil procedure. C.R.C.P. 1(a) and (b). They argue, further,

that jurisdiction under the rules attaches when a case is filed and, here, the case was filed and the "official proceeding" was still pending before the answers to the interrogatories were submitted. We agree with the People.

First degree perjury occurs in the course of "any official proceeding" in which a person makes a materially false statement, which that person does not believe to be true, under an oath required or authorized by law. Section 18–8–502(1), C.R.S. (1986 Repl.Vol. 8B); *People v. Scott,* 785 P.2d 931 (Colo.1990).

Perjury in the second degree is committed if, "other than in an official proceeding," to mislead a public servant engaged in official duties, a person makes such a statement, which the person does not believe to be true, under an oath required or authorized by law. Section 18–8–503, C.R.S. (1986 Repl.Vol. 8B); *People v. Francois,* 198 Colo. 249, 598 P.2d 144 (1979).

Here, after an investigation based upon numerous complaints, the District Attorney, in April 1987, filed a lawsuit requesting injunctive relief and restitution against the defendants and others. In the course of the earlier investigation, a person or persons associated with defendants submitted documents thought to be forged. During the discovery phase of the lawsuit, interrogatories were submitted to defendant Chaussee to which he supplied replies alleged to be materially false. Those replies form the basis of the first degree perjury counts in this matter which the trial court reduced to second degree perjury.

■ The difference between first and second degree perjury does not turn on whether the statement is written versus oral. Written statements may also be made under "oath" pursuant to § 18–8–501, C.R.S. (1986 Repl.Vol. 8B). The difference between the two degrees of perjury depends, instead, upon whether the false statement made under oath occurs in an "official proceeding."

Section 18–8–501(3), C.R.S. (1986 Repl. Vol. 8B) defines such a proceeding as follows:

'Official proceeding' means a proceeding heard before any legislative, judicial, administrative, or other government agency, or official authorized to hear evidence under oath, including any referee, hearing examiner, commissioner, notary, or other person taking testimony or *depositions* in any such proceeding. (emphasis added)

■ The lawsuit out of which the forgery and perjury counts sprang was governed by the Colorado Rules of Civil Procedure. C.R.C.P. 1(a) and (b). *See Moody v. Larsen*, 802 P.2d 1169 (Colo.App.1990).

Under C.R.C.P. 31, interrogatories are designated as depositions upon written questions. In the same manner that oral depositions must proceed after the witness has appropriately been put under oath and the officer doing so must swear on his own oath to having done so, so those answering interrogatories must also do so on their oath to tell the truth, and that oath must be averred to by the person having administered the oath. C.R.C.P. 30(c), (e), and (f); 31(a) and (b).

Thus, the definition of official proceeding, § 18–8–501(3), C.R.S. (1986 Repl.Vol. 8B), which includes judicial proceedings in the course of which depositions are given under oath, must be read as including interrogatories.

Furthermore, "testimony" is defined pursuant to § 18–8–601(2), C.R.S. (1986 Repl. Vol. 8B) as including "oral or written statements, documents, or any other evidence that may be offered by or through a witness in an official proceeding." The interrogatories, under the circumstances of this case, are certainly testimony, and possibly evidence, under oath given in an official proceeding.

Thus, we conclude that if perjury was committed in the context of the replies to interrogatories in the COCCA civil action, it is, as a matter of law, perjury in the first degree. Hence, the trial court erred in entering findings of fact and conclusion of law and orders reducing the perjury charges from first degree to second degree perjury.

The order of the trial court regarding the COCCA charges is affirmed as to the predicate acts of perjury, and is, in all other respects, reversed. The order reducing the perjury charges is reversed. The cause is remanded with directions to reinstate the COCCA charges not having perjury as a predicate, to reinstate the perjury in the first degree charges, and for appropriate disposition of the reinstated charges after reconsideration of the existing record.

CRISWELL and DAVIDSON, JJ., concur.