The PEOPLE of the State of Colorado, Petitioner/Cross–Respondent,

v.

Calvin L. CHAUSSEE II, Respondent/Cross– Petitioner,

and

Claude Ray Page, Respondent.

No. 92SC609.

Supreme Court of Colorado, En Banc.

Sept. 12, 1994.

**750**

John W. Suthers, Dist. Atty., Fourth Judicial Dist., and Lovice D. Riffe, Deputy Dist. Atty., Colorado Springs, for petitioner/cross-respondent.

Vaglica & Carlson and Phillip A. Vaglica, Colorado Springs, for respondent/cross-petitioner.

No appearance for respondent Claude Ray Page.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *People v. Chaussee*, 847 P.2d 156 (Colo.App. 1992). The defendants, Calvin L. Chaussee II and Claude Ray Page, were charged with criminal conspiracy and illegal use of an enterprise in violation of the Colorado Organized Crime Control Act ("COCCA" or the "Act") as well as theft, conspiracy to commit theft, forgery, and tampering with physical evidence.[1] Chaussee was also charged individually with several counts of first degree perjury. After a preliminary hearing, the trial court found that probable cause existed to support all charges except violations of COCCA and first degree perjury. As to the perjury charges, the court found that probable cause had been established for second degree perjury, rather than perjury in the first degree, and held Chaussee for trial on the reduced charges. The prosecution appealed the dismissal of the COCCA charges and the reduction of the perjury charges.[2] The court of appeals reversed the trial court's dismissal of charges against the defendants for violation of COCCA and remanded with directions to reinstate those COCCA charges not having perjury as a predicate. *Chaussee*, 847 P.2d at 162. In addition, the court of appeals reversed the trial court's ruling that false answers to interrogatories pursuant to civil discovery amount only to perjury in the second degree. It remanded with directions to reinstate the perjury in the first degree charges against Chaussee. *Id.* The prosecution agreed with the reinstatement of the charges but sought certiorari to review the court of appeals'

---

1. The charge against Page for tampering with physical evidence was dismissed on the motion of the district attorney prior to the preliminary hearing.

2. C.A.R. 1(a)(1) provides:
   An appeal to the appellate court may be taken from: (1) A final judgment of any district, superior, probate, or juvenile court in all actions or special proceedings whether governed by these rules or by the statutes.

In *People v. Young*, 814 P.2d 834 (Colo.1991), we stated: "We have considered dismissal of a charge from a multi-count information to be a 'final judgment' for purposes of appellate review under C.A.R. 1(a)(1)." *Id.*, 814 P.2d at 837 (quoting *People v. Jefferson*, 748 P.2d 1223, 1224 (Colo.1988)). We also consider the reduction of a perjury charge from first degree to second degree to be a final judgment for these purposes.

construction of COCCA. Chaussee cross-petitioned for review of the reinstatement of the COCCA and first degree perjury charges. We granted the petition and cross petition and now reverse the judgment of the court of appeals on the construction of COCCA but affirm on reinstatement of the COCCA and first degree perjury charges, and remand the case with directions.

## I.

In February 1986, Colorado Springs Future Communications, Inc. (the "corporation") commenced the business of marketing dealerships and selling assorted electronic devices.[3] The corporation was owned or controlled, or both owned and controlled, by Chaussee, while Page managed the dealership sales. The dealerships were marketed by mail and over the telephone. According to representations made by the corporation, persons who purchased the dealerships were to sell phased-array television antennae to the public. The antennae were to be obtained by the corporation and supplied to the dealers. Hundreds of individuals purchased the dealerships at a cost of $1500.00 per dealership.[4] According to representations made by the corporation, these sums were to be placed in an escrow account and a portion repaid to the new dealers with each antenna sold.

Contrary to the corporation's representations, the funds were not kept in escrow. Chaussee took one third of each dealership deposit, and the rest was used by Page to pay himself and to cover the expenses of running the corporation. Moreover, although Chaussee was negotiating with several research and development companies for the development of a phased-array television antenna throughout the period in which the dealerships were being sold, the corporation never possessed any phased-array antennae and it was unclear that it would ever obtain such antennae.

Chaussee structured and operated the corporation in such a way as to avoid accountability to those who purchased the dealerships. He divided the corporation into a service section and a sales section and kept communication between the two sections to a minimum. By dividing the corporation into two sections, Chaussee hoped to promote confusion so that a dealer requesting a refund would not know whom to contact, and the two sections could blame each other for the inability to obtain a refund for that dealer. The sales staff was insulated from the numerous telephone complaints from dealers requesting either the product or refunds of their deposits. Chaussee hired other employees to answer these calls so that the sales staff would not be aware of the high volume or the substance of the complaints.

From the outset of sales activities, in an effort to discourage litigation, Chaussee directed Page and his staff not to sell dealerships to Colorado residents. Chaussee believed that out-of-state residents would be unwilling to pursue a civil lawsuit in Colorado for the $1500.00 cost of a dealership because of the logistical difficulties and the expense involved in litigating a case.

The El Paso County district attorney's office began receiving hundreds of complaints from dealers about the corporation, and began investigating the corporation in August 1986. During the course of that investigation, Page told an investigator for the district attorney's office that the corporation had 10,000 of the phased-array antennae in a Canadian warehouse and that it had contracted with a research scientist to produce such antennae. In fact, no such contract existed, and the Canadian company had not even completed its own research and development of such a product. In March 1987, the corporation stopped selling dealerships and all activity in the corporate account ceased. Later that same month, corporate telephones were disconnected and mail refused.

3. The description of events underlying the charges in this case is derived from evidence presented at the preliminary hearing. The "facts" as set forth have not been judicially determined to be true.

4. Between February 1986 and March 1987, individuals paid approximately $2,280,000 for dealerships.

On April 6, 1987, the district attorney filed a civil action against the corporation under the Colorado Consumer Protection Act, §§ 6–1–101 to –115, 2 C.R.S. (1988), seeking various remedies, including a permanent injunction and restitution. During the course of discovery, the district attorney served Chaussee with two sets of interrogatories. Chaussee signed and attested his responses to the interrogatories and returned them to the district attorney. As of the time the petition for certiorari was filed in the present case, no hearing had been held on this civil case, and the case was still pending.

On April 2, 1990, the district attorney filed an information in the El Paso County District Court, charging Chaussee and Page with fourteen counts of criminal conspiracy, illegal use of an enterprise, conspiracy to commit theft, theft, forgery, perjury, and tampering with physical evidence.[5] Counts one and two of the information pertained to the activities conducted by the defendants through the corporation and alleged that those activities violated section 18–17–104(3) and (4), 8B C.R.S. (1986), of COCCA. Counts eight, twelve, and fourteen charged Chaussee with first degree perjury for his responses to the interrogatories sent to him in connection with the consumer protection suit.

At the preliminary hearing, numerous witnesses testified to and were cross-examined on the nature of the dealership business and on the defendants' conduct with respect to the operation of the corporation. The trial court later issued its ruling from the bench.

In the course of its ruling, the trial court analyzed counts one and two, the COCCA claims. The court stated its intention to be guided by federal law in the absence of controlling state law because the language of the Act and the federal Racketeer Influenced and Corrupt Organizations Act was so similar. See Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961–1968 (1988 & 1993 Supp.) ("RICO"). The trial court found no probable cause to support the two COCCA claims. The court essentially determined that the alleged scheme to defraud individuals was a single episode that could not be carved into different parts to make up the predicate acts necessary to establish a *pattern* of racketeering activity in violation of the Act.

The trial court also addressed counts eight, twelve, and fourteen, the first degree perjury charges against Chaussee. The court determined that first degree perjury pertains to oral testimony given under oath in a formal proceeding—such as testimony at trial or before a grand jury. Because here the three perjury counts were based on verification of written answers to interrogatories rather than testimony in a formal judicial proceeding, the court held that the charges must be reduced to second degree perjury, a class one misdemeanor.[6] The district attorney appealed to the court of appeals from the trial court's rulings dismissing the two COCCA charges and reducing the three first degree perjury charges against Chaussee to second degree perjury.

The court of appeals reversed the trial court's rulings on both the COCCA and the perjury counts and remanded the case with directions to reinstate the COCCA charges against both defendants and to reinstate the perjury in the first degree charges against Chaussee. Relying on federal case law, the court of appeals determined that proof of a pattern of racketeering activity, as required by COCCA, requires at least two related racketeering predicates that either repeat over a "closed" period of time or threaten, explicitly or implicitly, the likelihood of con-

---

5. Both Chaussee and Page were charged with criminal conspiracy under COCCA (count 1), illegal use of an enterprise under COCCA (count 2), theft (count 3), and conspiracy to commit theft (count 4). Page was charged individually with two counts of second degree forgery (counts 5 and 6), and one count of tampering with physical evidence (count 7). The latter charge was dismissed on the district attorney's motion early in the proceedings. Chaussee was charged individually with three counts of first degree perjury (counts 8, 12, and 14), three counts of tampering with physical evidence (counts 9, 11, and 13), and one count of second degree forgery (count 10).

6. The trial court found that probable cause had been established to support counts 3, 4, 5, 6, 9, 10, 11 and 13, *see supra* n. 5, and those findings are not at issue here.

tinued racketeering activity projecting into the future. *Chaussee,* 847 P.2d at 159. Because evidence in the record reflected multiple related fraudulent acts "perpetrated upon multiple individuals which threatened to repeat indefinitely," *id.* at 160, the court of appeals determined that there was probable cause to support the COCCA claims.

The court of appeals also held that the trial court erred in ruling that false answers to interrogatories pursuant to civil discovery constitute perjury in the second degree, rather than first degree perjury. The court of appeals noted that the distinction between first and second degree perjury depends on whether the false statement made under oath occurs in an official proceeding. The court of appeals reasoned that "the definition of official proceeding, § 18–8–501(3), [8B C.R.S. (1986)], which includes judicial proceedings in the course of which depositions are given under oath, must be read as including interrogatories." *Id.* at 162. The court concluded that "if perjury was committed in the context of the replies to interrogatories in the COCCA civil action, it is, as a matter of law, perjury in the first degree." *Id.*

Both the prosecution and Chaussee sought certiorari review of the court of appeals' decision. Although the prosecution agrees with the court of appeals' conclusion that probable cause was established for counts one and two, the prosecution argues that federal precedent should not be followed in construing the Act and that, properly construed, the statutory requirements for establishing a COCCA violation are less demanding than those for proving a federal RICO crime. Chaussee cross-petitioned for certiorari, arguing that although the court of appeals properly held that federal law should provide guidance in construing the Act, the court of appeals misapplied that law to the facts of this case. Chaussee also sought certiorari to review the court of appeals' reinstatement of the first degree perjury charges.

We granted the prosecution's petition for certiorari to decide (1) "whether the Colorado definition of 'pattern of racketeering activity' requires proof showing that predicate acts are not only related to the enterprise but also proof of a relationship 'one to the other'," and (2) "whether the Colorado definition of 'pattern of racketeering activity' requires proof of continuity." We also granted Chaussee's cross-petition for certiorari to decide (3) whether the prosecution demonstrated probable cause as to the element of "continuity" so as to support a finding of a "pattern of racketeering activity" under the Act, and (4) whether the prosecution demonstrated probable cause for a charge of first degree perjury.

■ We affirm the judgment of the court of appeals in part and reverse in part. In order to establish a "pattern of racketeering activity" under COCCA, it is not necessary to prove that the criminal acts meet standards of continuity or of relatedness to one another as those requirements have been established by judicial construction under RICO. Probable cause was established to support the COCCA charges. Furthermore, probable cause was shown to support the charges of perjury in the first degree against Chaussee.

## II.

We first address the issues arising under the Colorado Organized Crime Control Act. A general understanding of the purpose and structure of the Act, and some comparisons with the parallel provisions of the Federal Racketeer Influenced and Corrupt Organizations Act, will provide a helpful background for consideration of the specific issues presented by this case.

### A.

COCCA was adopted by the general assembly in 1981. Ch. 229, Sec. 1, §§ 18–17–101 to –109, 1981 Sess.Laws 1015, 1015–25. In general, it was patterned after the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1988 & 1993 Supp.), commonly referred to as RICO, passed by the United States Congress in 1970. *Benson v. People,* 703 P.2d 1274, 1276 n. 1 (Colo.1985).

COCCA is prefaced by a detailed statement of legislative purpose, recognizing the pervasive and pernicious presence of organized crime in our society, including the use of money obtained through illegal activities

"to infiltrate and corrupt legitimate business and labor organizations and to subvert and corrupt our democratic processes." § 18–17–102, 8B C.R.S. (1986). The general assembly therefore declared "that it is the purpose of this article to seek the eradication of organized crime in this state by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *Id.* This legislative declaration closely parallels the Statement of Findings and Purpose that introduces the Federal Organized Crime Control Act of 1970, of which RICO is a part. *See* Pub.L. No. 91–452, 84 Stat. 922, 922–23 (1970).

Neither RICO nor COCCA, however, makes reference to organized crime in the operative provisions of those statutes. Rejecting a claim that "a defendant's racketeering activities form a pattern only if they are characteristic either of organized crime in the traditional sense, or of an organized-crime-type perpetrator, that is, of an association dedicated to the repeated commission of criminal offenses," the United States Supreme Court held that "whatever the merits and demerits of such a limitation as an initial legislative matter, [such a claim] finds no support in [RICO's] text, and is at odds with the tenor of its legislative history." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 243–44, 109 S.Ct. 2893, 2903, 106 L.Ed.2d 195 (1989). Although the occasion for the adoption of RICO "was the perceived need to combat organized crime," Congress chose to adopt a more general statute "not limited in application to organized crime." *Id.* at 248, 109 S.Ct. at 2905; *see Sedima,*

*S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 493–500, 105 S.Ct. 3275, 3283–87, 87 L.Ed.2d 346 (1985) (rejecting any requirement that "racketeering injury" is a necessary element of a civil RICO claim).

Both COCCA and RICO impose civil and criminal liability on persons who engage in certain "prohibited activities." As relevant to the charges in the present case, the proscribed activities are as follows:

(3) It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity. . . .

(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection . . . (3) of this section.

§ 18–17–104(3) and (4), 8B C.R.S. (1986).[7]

COCCA adopts a broad definition of "enterprise," one of the terms employed in the foregoing description of "prohibited activities." Under COCCA,

(2) "Enterprise" means any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any chartered union, association, or group of individuals, associated in fact although not a legal entity, and shall include illicit as well as licit enterprises and governmental as well as other entities.

§ 18–17–103(2), 8B C.R.S. (1986).[8]

"Racketeering activity" is defined in COCCA to encompass a large number of criminal acts and related activities, including those constituting "racketeering activity" under RICO.[9] § 18–17–103(5), 8B C.R.S. (1986).

---

7. Under RICO, the corresponding prohibited activities are as follows:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection[ ] . . . (c) of this section.
> 18 U.S.C. § 1962(c) and (d) (1988).

8. The RICO definition, also broad but not identical, is found at 18 U.S.C. § 1961(4) (1988).

9. COCCA defines "racketeering activity" in relevant part as follows:
> (5) "Racketeering activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:
> (a) Any conduct defined as "racketeering activity" under 18 U.S.C. 1961(1)(A), (1)(B), (1)(C), and (1)(D); or
> (b) Any violation of the following provisions of the Colorado statutes or any criminal act

The RICO definition of "racketeering activity," incorporated in § 18–17–103(5)(a) of COCCA, specifies that such activity means any act or threat involving specified state law crimes, any act indictable under particularly specified federal criminal statutes, and certain specified federal offenses. 18 U.S.C. § 1961(1) (1993 Supp.).

Finally, "pattern of racketeering activity," as that term is used in the description of the prohibited activities with which the defendants are charged under § 18–17–104(3) and (4), is defined in COCCA in the following manner:

> (3) "Pattern of racketeering activity" *means* engaging in at least two acts of racketeering activity *which are related to the conduct of the enterprise,* if at least one of such acts occurred in this state after July 1, 1981, and if the last of such acts occurred within ten years (excluding any period of imprisonment) after a prior act of racketeering activity.

§ 18–17–103(3), 8B C.R.S. (1986) (emphasis added).

The RICO definition of "pattern of racketeering activity" varies from its COCCA counterpart in some respects:

> (5) "pattern of racketeering activity" *requires* at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

18 U.S.C. § 1961(5) (1988) (emphasis added).

It is the definition of "pattern of racketeering activity" under COCCA that is at issue

committed in any jurisdiction of the United States which, if committed in this state, would be a crime under the following provisions of the Colorado statutes: [enumerating a large group of specific offenses including those charged as predicate offenses in the present case].

10. After *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), federal courts had generally split on the issue of whether multiple schemes were required to satisfy RICO's "pattern" requirement. *Compare, e.g., International Data Bank Ltd. v. Zepkin,* 812 F.2d 149, 154–55 (4th Cir.1987) (a "single, limited

here, for only when the requirements for satisfying that definition are identified can it be determined whether the conduct charged in counts one and two of the information in the present case constitutes violations of COCCA. We proceed next to a construction of that term.

### B.

Neither this court nor the Colorado Court of Appeals has had occasion to construe the term "pattern of racketeering activity" under the Act. In contrast, the United States Supreme Court has expressly addressed the meaning of that term under 18 U.S.C. § 1961(5) (1988) in *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900–2901. In that case, a United States District Court had dismissed a civil RICO suit on motion under Fed.R.Civ.P. 12(b)(6) because the alleged acts of bribery and other improper actions to influence members of a state public utilities commission in the performance of their duties, although occurring over a six year period, constituted only a single scheme. The Eighth Circuit Court of Appeals affirmed, holding that a single fraudulent scheme was insufficient to establish a pattern of racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 829 F.2d 648, 650 (8th Cir. 1987).[10] On certiorari review, the United States Supreme Court rejected the multiple scheme requirement and explained what is necessary to establish a "pattern of racketeering activity" under RICO.

The Court noted that the language of RICO specifies only that a pattern of racketeering activity "requires" at least two acts of racketeering activity within a designated

fraudulent scheme" to defraud not of itself sufficient to amount to a pattern of racketeering activity); *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986) (refused to find a RICO pattern where predicate acts committed in furtherance of a single scheme) *with, e.g., Bank of America v. Touche Ross & Co.,* 782 F.2d 966, 970–71 (11th Cir.1986) (a single scheme involving predicate acts of mail and wire fraud sufficient to satisfy pattern requirement); *RAGS v. Hyatt,* 774 F.2d 1350, 1354–55 (5th Cir.1985) (one fraudulent scheme involving the use of the mails sufficient to state a RICO claim of pattern of racketeering activity).

broad span of time. *H.J. Inc.*, 492 U.S. at 237, 109 S.Ct. at 2899–2900. This implies, the Court reasoned, that while two acts are necessary they may not be sufficient. *Id.; see also Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. That is, the definition "assumes" that there is something more to a RICO "pattern" than simply the number of predicate acts involved. *H.J. Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900. The use of the word "pattern" in both the designation of prohibited activities, 18 U.S.C. § 1962 (1988), and in the definitional section, 18 U.S.C. § 1961(5) (1988), implies a relationship of predicate acts to each other or to some external organizing principle that renders them "ordered" or "arranged." *Id.* In the absence of assistance from the text of the statute, the Court turned to legislative history to interpret the term and concluded that "pattern" requires both relatedness and continuity of the predicate acts. *Id.* at.238–39, 109 S.Ct. at 2900–01. "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900 (emphasis in original).[11]

Elaborating on the requirement of relatedness, the Court found guidance in Title X of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922, of which RICO formed Title IX. *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900–01. Title X provides for increased sentences where, among other things, a defendant has committed a prior felony as part of a pattern of criminal conduct or in furtherance of a conspiracy to engage in a pattern of criminal conduct. The Court noted that Title X provides that "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901 (quoting 18 U.S.C. § 3575(e) (repealed in 1986)). The

Court then observed, "[w]e have no reason to suppose that Congress had in mind for RICO's pattern of racketeering component any more constrained a notion of the relationships between predicates that would suffice." *Id.*

Turning to the requirement of continuity, the Court rejected as excessively rigid the Eighth Circuit Court of Appeals' holding that a single fraudulent effort or scheme is insufficient. Instead, the Court observed that proof of continuity of racketeering activity or its threat is what is required and that this can be achieved in a variety of ways, making difficult the formulation of a general test. To begin the delineation of such a requirement, however, the Court stated: " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. Continuity is centrally a temporal concept. It may be demonstrated over a closed period by proving a series of related predicates over a substantial period of time—predicate acts extending over a few weeks or a few months and threatening no future criminal conduct will not suffice. *Id.* at 242, 109 S.Ct. at 2902. As an open-ended concept, the establishment of a threat of continuing racketeering activity is very fact dependent and may be inherent in the nature of the criminal acts or in a way of doing business by an ongoing entity. *Id.* at 242–43, 109 S.Ct. at 2902–03.

### C.

In reversing the dismissal of the COCCA charges in the present case, the Colorado Court of Appeals followed the interpretation of "pattern of racketeering activity" enunciated in *H.J. Inc.* The prosecution argues that this interpretation should not be adopted because of differences in the language of the relevant provisions of COCCA and RICO and, specifically, that COCCA expressly requires neither relationship among predicate acts nor continuity of such acts in

---

**11.** Relying principally on RICO's generally worded text, the Court rejected the contention that predicates form a RICO pattern only if they have

a nexus to organized crime. *H.J. Inc.*, 492 U.S. at 243–49, 109 S.Ct. at 2902–06.

order to constitute a pattern of racketeering activity.

Familiar principles of statutory construction guide our analysis. A court's first goal is to ascertain and give effect to the intent of the legislature as expressed in the statute. *State Engineer v. Castle Meadows, Inc.,* 856 P.2d 496, 504 (Colo.1993); *People v. Terry,* 791 P.2d 374, 376 (Colo.1990). To discern that intent, we look first to the statutory language, giving statutory terms their plain and ordinary meaning. *Charlton v. Kimata,* 815 P.2d 946, 949 (Colo.1991); *Sigman By & Through Sigman v. Seafood Ltd. Partnership,* 817 P.2d 527, 530 (Colo.1991); *accord Triad Painting Co. v. Blair,* 812 P.2d 638, 644 (Colo.1991) (court must give words their commonly accepted and understood meaning; strained or forced construction is to be avoided). "Where the statutory language is clear and unambiguous we need not resort to interpretive rules of statutory construction." *Snyder Oil Co. v. Embree,* 862 P.2d 259, 262 (Colo.1993).

RICO, it will be recalled, makes no mention of either continuity of predicate acts or relationship among them in defining "pattern of racketeering activity." The United States Supreme Court in *H.J. Inc.* derived those requirements from the natural meaning of "pattern," which is used in describing prohibited activities in section 1962 and is part of the term "pattern of racketeering activity" explained in section 1961(5). The prosecution in the present case argues that COCCA provides a self-contained definition of that term because it states what the term "means" rather than explaining what the term "requires," as in RICO. The United States Supreme Court in *H.J. Inc.* found significance in this distinction, noting that because "means" was used in various definitions in section 1961 of RICO but "requires" was used in describing "pattern of racketeering activity," that latter description, requiring two predicate acts within a specified period, "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *Id.* at 237, 109 S.Ct. at 2899. That is, the statutory language indicates that "Congress envisioned circumstances in which

no more than two predicates would be necessary to establish a pattern of racketeering—otherwise it would have drawn a narrower boundary to RICO liability, requiring proof of a greater number of predicates. But, at the same time, the statement that a pattern 'requires at least' two predicates implies 'that while two acts are necessary, they may not be sufficient.'" *H.J. Inc.,* 492 U.S. at 237, 109 S.Ct. at 2900 (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985)); *id.* at 527 (Powell, J., dissenting).

We agree with the prosecution that the COCCA definition of "pattern of racketeering activity" is complete and self-contained. The legislature has specifically stated what the term *means,* rejecting the use of the word *requires* as found in the parallel definitional section of RICO, the statute after which COCCA was patterned. We must assume that the legislature departed from the RICO language advisedly and are persuaded by the United States Supreme Court's analysis in *H.J. Inc.* that this choice of words is highly relevant in the construction of the language defining "pattern of racketeering activity."

■ In *H.J. Inc.,* the United States Supreme Court in arriving at a definition of "pattern of racketeering activity" was also confronted with an apparent inconsistency if it were to conclude that RICO's explanation of that term is a self-contained definition. The RICO provision necessitates only "at least two acts of racketeering activity" within a specified time. The word "pattern" itself, however, in normal usage connotes something more: an order or arrangement of acts bearing some relationship to each other or to an external organizing principle. *H.J. Inc.,* 492 U.S. at 238, 109 S.Ct. at 2900. This, together with the use of the term "requires" among a group of definitions otherwise employing the words "means" or "includes" was very suggestive that section 1961(5) was not intended to be a self-contained definition for purposes of RICO. *Id.* at 237–38, 109 S.Ct. at 2899–2900. COCCA, however, supplies the order or arrangement necessary to establish a pattern by providing that the acts of racketeering activity must be "related to the

conduct of the enterprise"—an element absent from the RICO definition. For these reasons, we conclude that a "pattern of racketeering activity" can ·be established under COCCA's section 18–17–103(3) simply by proving at least two acts of racketeering activity, as defined in section 18–17–103(5), that are *related to the conduct of the enterprise.*[12] This construction is consistent as well with the statutory rule of liberal construction adopted to effectuate the intent and purpose of COCCA.· *See* § 18–17–108, 8B C.R.S. (1986).

Although the specific language of the Act makes it unnecessary to resort to legislative history to arrive at a proper construction, the rather limited relevant legislative history supports the construction we have adopted. In a synopsis prepared by the office of the Colorado Attorney General and included in the Staff Summary of the House Committee on Judiciary Meeting on House Bill 1560 as Appendix B,[13] it was stated:

> [C]riminal prosecution is permitted when a person or groups [sic] of individuals known as an "enterprise" ... commits or is involved in committing two or more acts constituting crimes known as a "pattern of racketeering activity".... For example, if a person or group of persons committed an arson in 1982 and thereafter committed an extortion in 1985, that enterprise could be prosecuted for a violation of this act in a single prosecution.

Staff Summary of House Committee on Judiciary, March 20, 1981, H.B. 1560, Appendix B (Synopsis of Colorado Organized Crime Control Act, attached to Memorandum from J.D. MacFarlane, Attorney General, to The Honorable Don Eberle, State Representative, March 2, 1981). *See also* Testimony of G. Robert Blakey before the House Committee· on Judiciary, March 20, 1981, H.B. 1560, characterizing COCCA's definition of "pattern of racketeering activity" as better than the definition in RICO and "[r]eally, very

clean and very clear," thus suggesting a lack of need for construction.

Commentators have also suggested that the COCCA definition of "pattern of racketeering activity" is clear and requires no construction. In a pre-*H.J. Inc.* article, one commentator noted the important distinction between the use of "requires" in the RICO explanation and "means" in COCCA and then observed:

> Thus, with the substitution of one simple word, the Colorado legislature eliminated the flexibility of RICO which has allowed federal courts to develop stricter pattern tests. While COCCA does require that predicate acts be "related to the conduct of the enterprise,"[ ] no requirement of continuity can be inferred from the statute's clear language.

Stephen H. Leonhardt, *Civil RICO Update: The Evolving "Pattern" Requirement—Part II*, 16 Colo.Lawyer 1004, 1010 (1987) (citation omitted); *accord* G. Robert Blakey and Greg A. Walker, *Emerging Issues Under the Colorado Organized Crime Control Act—Colorado's Little RICO*, 18 Colo.Lawyer 2077, 2080 (1989) ("Thus COCCA provides a clear definition [of 'pattern of racketeering activity']—two or more acts of racketeering activity that are related to the conduct of the enterprise (they need not be related to each other or part of a single scheme) constitute a pattern."); Timothy Kingston, *The RICO Pattern Requirement in Colorado Federal Courts Since H.J. Inc.*, 20 Colo.Lawyer 1617, 1618 (1991) ("Thus, as long as a COCCA plaintiff pleads two acts related in some way 'to the conduct of the enterprise,' the plaintiff may have plead [sic] enough.").

Finally, we derive further support for our construction of COCCA's pattern requirement from a decision of the Supreme Court of Oregon, *Computer Concepts, Inc. v. Brandt*, 310 Or. 706, 801 P.2d 800 (1990). That case presented the issue of whether continuity is required to establish a "pattern

---

**12.** It must be remembered that a pattern of racketeering activity is not in itself an offense under COCCA. Rather, as charged in the present case, it must be shown that the person engaging in that activity is employed by or associated with an enterprise and that such person knowingly conducted or participated in such enterprise through

the pattern of racketeering activity. § 18–17–104(3), 8B C.R.S. (1986).

**13.** Staff Summaries are prepared by legislative council and deposited at the Colorado State Archives.

of racketeering activity" under Oregon's counterpart of COCCA. The defendants relied on *H.J. Inc.*'s determination that continuity is a necessary element for establishing such a pattern. The Oregon statute, although not identical to COCCA's section 18–17–103(5),[14] uses "means," rather than the RICO term "requires," in defining pattern of racketeering activity, as does COCCA. The Oregon court held that "[t]he use of the word 'means' implies that the legislature intended the definition to be complete and self-contained." *Computer Concepts*, 801 P.2d at 807. The court did note that the requirement that the racketeering acts not be "isolated incidents," *see* Or.Rev.Stat. § 166.-715(4) *supra* at 35 n. 14,—a requirement not found in the COCCA definition—could be construed as adding a temporal element of continuity, but after surveying legislative history concluded that such an element was not to be implied.

We are aware of a series of federal court cases holding that COCCA's "pattern of racketeering activity" definition should follow the meaning of that term as found in RICO. *See Behunin v. Dow Chemical Co.*, 650 F.Supp. 1387, 1390 (D.Colo.1986) (without discussion and without noting the difference in language between RICO and COCCA, stating "I find the pattern requirement of the state law to coincide with the meaning of its federal counterpart"); *In Re Dow Co. Sarabond Products Liability Litigation*, 666 F.Supp. 1466 (D.Colo.1987) (citing *Behunin* for the proposition that because COCCA is "based on" RICO it should be construed the same way); *Alter v. DBLKM, Inc.*, 840 F.Supp. 799, 809 (D.Colo.1993) (stating, without analysis, that COCCA is modelled on RICO and construed in the same manner as

RICO). We are also aware that the Florida Supreme Court has construed the definition of "pattern of racketeering activity" as found in Florida's counterpart of RICO [15] to include a requirement of continuity of criminal activity notwithstanding the absence of explicit statutory language. *Bowden v. State*, 402 So.2d 1173, 1174 (Fla.1981). The Florida "pattern" definition does contain language requiring relatedness between incidents of racketeering activity and specifically requires incidents that are "not isolated." In addition, the Florida court noted that a continuity requirement will appropriately target "the professional or career criminals and not non-racketeers who have committed relatively minor crimes." *Id.* at 1174. Based on the reasoning of *H.J. Inc.* and the language employed by the general assembly in defining "pattern of racketeering activity" for purposes of COCCA, we are persuaded that the construction adopted by the federal cases is not correct, and nothing in *Bowden* convinces us to the contrary.

**D.**

▮ Our construction of COCCA's "pattern of racketeering activity" requirement varies both from that of the trial court, which held that a single scheme or episode could not qualify as a pattern, and from that of the court of appeals, which adopted the federal RICO requirements of relatedness among predicate acts and continuity of those acts in order to constitute a pattern. Although determination of probable cause at a preliminary hearing based on application of the correct legal standard to the evidence is appropriately a function to be performed by the

---

14. The Oregon statute provides:

"Pattern of racketeering activity" means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents, provided at least one of such incidents occurred after November 1, 1981, and that the last of such incidents occurred within five years after a prior incident of racketeering conduct.

Or.Rev.Stat. § 166.715(4) (1993).

15. The Florida statute provides:

"Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.

Fla.Stat. ch. 895.02(4) (1981).

trial court, we are satisfied that the evidence in the record is sufficiently clear to enable us to resolve the probable cause issue on the COCCA charges without the necessity for remand.[16] This is because at a preliminary hearing, a judge must "'view the evidence presented in the light most favorable to the prosecution.'" *People v. Juvenile Court*, 813 P.2d 326, 329 (Colo.1991) (quoting *People v. District Court*, 803 P.2d 193, 196 (Colo.1990); *People v. District Court*, 779 P.2d 385, 388 (Colo.1989)). The preliminary hearing is a screening device, and not a mini-trial, therefore much latitude must be accorded the prosecution at this stage to establish probable cause that the defendant committed the crime as charged. *People v. Juvenile Court*, 813 P.2d at 329; *People v. District Court*, 803 P.2d at 196. "'It is not for the trial judge at a preliminary hearing to accept the defendant's version of the facts over the legitimate inferences which can by drawn from the People's evidence.'" *People v. District Court*, 803 P.2d at 196 (quoting *People v. Holder*, 658 P.2d 870, 872 (Colo.1983)). Weighing the merits of the case is reserved for the trier of fact at trial. *Id.*

The record is replete with evidence that the defendants knowingly conducted or participated in the affairs of the corporation, Colorado Springs Future Communications, Inc.,[17] through a series of acts of mail fraud, wire fraud, and theft constituting multiple instances of racketeering activity so related to the conduct of the corporation as to constitute a pattern of racketeering activity. This evidence establishes probable cause to support the COCCA charges against the defendants in counts one and two of the information.

■ Counts one and two also specify as predicate acts of racketeering activity the forgery charges against Page in counts five and six, the perjury charges against Chaussee in counts eight, twelve, and fourteen, the tampering with physical evidence charges against Chaussee in counts nine, eleven, and

thirteen, and the forgery charges against Chaussee in count ten of the information. We conclude that, of these acts charged, only Page's acts of forgery were shown to be "related to the conduct of the enterprise" and thus only those acts can be included among the predicate acts making up the "pattern of racketeering activity" alleged in counts one and two.

While working for the corporation, Page allegedly committed two acts of forgery. First, in November of 1986, Page allegedly presented a falsified document to the district attorney's office. The district attorney had requested documents as part of a civil investigation of the corporation. Next, in February 1987, in response to interrogatories issued to the corporation, Page allegedly submitted a fraudulently altered letter. Both of these acts are sufficiently related to the conduct of the enterprise so as to amount to predicate acts of a pattern of racketeering activity, because through the act of forgery the defendant sought not only to avoid liability but also to protect the integrity of the ongoing enterprise. *Cf. U.S. v. Thevis*, 665 F.2d 616, 625 (5th Cir.1982) (in RICO case, defendant's murder of government witness who threatened to testify against him was considered a predicate act because it protected the integrity of the enterprise and furthered the enterprise's business), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982).

Unlike Page's alleged forgeries, Chaussee's acts of misconduct all arose out of discovery proceedings instituted as part of the civil action the district attorney brought against the corporation on April 7, 1987, under the Colorado Consumer Protection Act, §§ 6–1–101 to –115, 2 C.R.S. (1992). Chaussee was accused of various acts of forgery, altering physical evidence, and perjury on dates ranging from March 1988 to December 1988 in connection with his responses to requests for discovery in that case. In March 1987, however, the corporation stopped sell-

---

**16.** We consider this issue to be comprehended within our grant of the prosecution's petition for certiorari to determine what is necessary to constitute a pattern of racketeering activity.

**17.** Although the information charging the defendants does not specifically identify the "enterprise," *see* § 18–17–104(3), it seems apparent from the nature of the allegations that the corporation is alleged to be the enterprise.

ing dealerships, and the evidence at the preliminary hearing indicated that no additional activities in furtherance of the allegedly fraudulent marketing scheme were conducted. Approximately eight months elapsed from discontinuance of the corporation's activities until Chaussee's alleged criminal acts incident to discovery proceedings in the civil case. Therefore, his alleged criminal conduct in responding to discovery requests was not related to the conduct of the enterprise. *See Appley v. West,* 832 F.2d 1021, 1028 (7th Cir.1987) (where enterprise is not in existence at time of predicate acts constituting pattern of racketeering activity, defendant, through that pattern of racketeering activity, could not have conducted the affairs of the enterprise).

Moreover, the apparent purpose of Chaussee's alleged discovery misconduct was merely to protect himself from personal liability. *See Purvis v. Hamwi,* 828 F.Supp. 1479, 1487 (D.Colo.1993) (obstruction of justice found unrelated to prior acts of violence under RICO and COCCA because while the violence served one distinct end, any obstruction of justice served another, specifically, defendant's attempts to cover his tracks). Considering the fact that the enterprise was dormant and apparently abandoned after March of 1987, the purpose of the alleged criminal offenses in the course of discovery eight months or more later could not have been to protect the integrity of the enterprise itself.

We are aware that the Second Circuit Court of Appeals has held that predicate acts need not be in *furtherance of* the affairs of the criminal enterprise in order to contribute to a "pattern of racketeering activity" under RICO. *U.S. v. Simmons,* 923 F.2d 934, 951 (2d Cir.1991), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991); *U.S. v. LeRoy,* 687 F.2d 610, 617 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *U.S. v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). However, the government must establish that the defendant:

'is enabled to commit the predicate offenses solely by virtue of his position in the enterprise *or* involvement in or control over the affairs of the enterprise,' or that 'the predicate offenses are related to the activities of the enterprise.'

*Simmons,* 923 F.2d at 951 (quoting *U.S. v. Salerno,* 868 F.2d 524, 533 (2d Cir.1989), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989)) (emphasis in original); *U.S. v. Robilotto,* 828 F.2d 940, 947–48 (2d Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 662 (1988).

Even under the approach of the Second Circuit Court of Appeals, Chaussee's discovery misconduct cannot be considered sufficient to establish a requisite predicate act under COCCA. The purpose of these alleged crimes committed during the course of discovery in the civil case was self-protection. Chaussee was not "enabled" by his position within the enterprise to commit these acts of discovery misconduct, nor were such acts related to activities of the enterprise, which had already ceased to do business.

Accordingly, we hold that there was no probable cause to establish that Chaussee's crimes allegedly committed during discovery in the civil actions could constitute part of the pattern of racketeering activity necessary to establish the COCCA charges in counts one and two of the information.

### III.

■ Defendant Chaussee contends that the court of appeals erred when it reversed the trial court's second degree perjury ruling and reinstated first degree perjury charges against him. We disagree.

In April of 1987, in connection with the civil suit brought by the district attorney against the defendants, two sets of interrogatories were submitted to Chaussee. Chaussee allegedly replied with materially false answers, given under oath, and the responses were mailed to the district attorney. Although the responses were never offered as evidence in any proceeding, Chaussee was charged with first degree perjury, a class four felony. *See* § 18–8–502, 8B C.R.S. (1986).

The trial court dismissed the first degree perjury charges and ruled that the false answers amounted to only second degree perju-

ry. However, the court of appeals reversed the trial court's ruling. It held that the false statements made by Chaussee in his responses to interrogatories constituted first degree perjury.

The elements of first degree perjury are set forth in section 18-8-502(1), 8B C.R.S. (1986), as follows:

A person commits perjury in the first degree if in any official proceeding he knowing makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law.

According to the Colorado perjury statutes, therefore, first degree perjury cannot be established unless the false statement has been shown to have been made in an official proceeding. The statutory definition of an official proceeding provides:

"Official proceeding" means a proceeding heard before any legislative, judicial, administrative or other government agency, or official authorized to hear evidence under oath, including any referee, hearing examiner, commissioner, notary, or other person taking testimony or depositions in any such proceedings.

§ 18-8-501(3), 8B C.R.S. (1986).[18]

The issue here is whether answers to interrogatories given by a party under oath in the course of civil litigation in the Colorado state courts are made in an "official proceeding." Chaussee contends that they are not because the definition of official proceeding requires that a proceeding be "heard." We believe this gives too narrow a construction to the definition of "official proceeding."

Certainly, a trial is an official proceeding. Interrogatories to parties are authorized under C.R.C.P. 33 as a means of discovery in preparation for trial. Answers to such interrogatories may be used at trial to the extent permitted by the laws of evidence. C.R.C.P. 33(b). Therefore, the potential that answers to such interrogatories may be used at trial is present whenever answers are made.[19] The procedure for answering interrogatories is calculated to impress upon the person providing such answers the necessity for truthfulness. "Each interrogatory shall be answered separately and fully in writing under oath...." C.R.C.P. 33(a). Indeed, the opportunity for thought and reflection is greater in answering a written interrogatory than in answering questions in the course of a trial. Failure to answer interrogatories may subject the party to sanctions. C.R.C.P. 37. We conclude that the pretrial process of answering interrogatories served upon parties under C.R.C.P. 33 is part of a proceeding heard before a judicial agency and that such answers therefore are made in an official proceeding within the meaning of sections 18-8-502(1) and 18-8-501(3).

Our construction of the first degree perjury statute is reinforced by reference to the purposes underlying the statute. Section 18-8-502(1) is modeled closely after provisions of the Model Penal Code.[20] In a background

18. Perjury in the second degree is defined as follows:

A person commits perjury in the second degree if, other than in an official proceeding, with an intent to mislead a public servant in the performance of his duty, he makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law.
§ 18-8-503(1), 8B C.R.S. (1986). That crime is a class 1 misdemeanor. § 18-8-503(2).

19. It is not necessary that the interrogatories actually be introduced at trial in order for them to be considered taken in an official proceeding. Cf. State v. Sands, 123 N.H. 570, 467 A.2d 202, 222 (1983) (a deposition or affidavit that is inadmissible at trial may nevertheless form the basis of a perjury conviction under statute requiring false statement to have been made in an official proceeding).

20. §§ 18-8-502 & 18-8-503 were originally codified as 1963 C.R.S. §§ 40-8-502 & 40-8-503 (1971 Supp.). The official comment to § 40-8-502 states that the reasoning behind Model Penal Code § 241.1 is "applicable to this jurisdiction." § 241.1 of the Model Penal Code defines felony perjury as follows:

A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.
"Official proceeding" is defined at section 240.0 of that Code as follows:

"official proceeding" means a proceeding heard or which may be heard before any legislative, judicial, administrative or other governmental agency or official authorized to take

comment on § 241.1, the felony perjury section of that code, the commentators explain:

Perjury is the most serious of several offenses designed to protect the integrity of information on which the government will rely. In general, it consists of four elements: (i) the making or reaffirming of a false statement; (ii) that is material to an official proceeding; (iii) in violation of an oath or equivalent affirmation; (iv) when the party making the statement does not believe it to be true.

It is the second and third of these ingredients that make the conduct involved in perjury especially serious. The requirement that the statement be material to an official proceeding isolates those occasions where inaccuracy may significantly impair important governmental interests. False statements affecting the outcome of such proceedings can jeopardize essential functions of government: the determination of guilt in a criminal trial, the adjustment of interests in a civil trial, and the development of a legislative record, to name only a few. The requirement that there be an oath or affirmation notifies the individual that the proceeding is formal and that the information supplied will be taken with a special seriousness. The combination of serious interference with government interests and notice to the individual that a proceeding is in earnest make it appropriate to treat making a false statement in such circumstances as a felony.

False answers to interrogatories directed to a party have a potential for serious impairment of the governmental interest in achieving a just determination of interests in a civil trial. Interference with the just determination of interests in a civil trial is among the serious interferences that perjury statutes are designed to punish. The procedures for obtaining answers to interrogatories give ample notice of the seriousness with which the process must be regarded. We are unpersuaded that knowing material false statements by a party in answer to written interrogatories were intended by the general assembly to be insulated from characterization as first degree perjury simply because they were not made in the course of a hearing.

## IV.

For the foregoing reasons, we affirm that part of the judgment of the court of appeals reversing dismissal of the first degree perjury charges against Chaussee, affirm the reinstatement of the COCCA charges with the limitations concerning predicate acts as set forth in this opinion, reverse the court of appeals' construction of "pattern of racketeering activity" under COCCA, and return the case to the court of appeals for remand to the trial court for further proceedings consistent with the views expressed in this opinion.

---

evidence under oath, including any referee, hearing examiner, commissioner, notary or

other person taking testimony or deposition in connection with any such proceeding ...