## No. 27118

### The People of the State of Colorado v. Donald J. Zupancic

(557 P.2d 1195)

Decided December 13, 1976. Rehearing denied January 10, 1977.

J. E. Losavio, Jr., District Attorney, Henry J. Geisel, Deputy, Patricia W. Robb, Deputy, for plaintiff-appellant.

Bollinger, Flick, Young & Drummond, Tuck Young, for defendant-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

On November 22, 1974, an indictment was returned in the Pueblo District Court charging the defendant, Donald J. Zupancic, with jury-tampering. 1971 Perm. Supp., C.R.S. 1963, 40-8-609.[1] The defendant filed a motion to dismiss which was granted by the court. The prosecution brings this appeal, alleging that the trial court erred in dismissing the indictment. We affirm.

---

[1] Now section 18-8-609, C.R.S. 1973.

The acts which brought about the indictment occurred in the Silver Saddle Nightclub which is located in Pueblo. Barbara Chrisman, an employee of the nightclub, was a member of the 1974 Pueblo County Statutory Grand Jury. She testified that she had seen the defendant in the Silver Saddle on numerous occasions and that the defendant had repeatedly questioned her and demanded information about who appeared and what the evidence was before the grand jury. As a grand juror, Barbara Chrisman had taken an oath of secrecy. Accordingly, she declined to discuss the activites or the evidence before the grand jury. Even though she declined to discuss her service aś a grand juror, the defendant, nevertheless, persisted in his questioning. As a result, she notified the district attorney, and an indictment was returned against the defendant.

The history of grand jury secrecy is closely tied to abuses which occurred in the charging process in England:

''The right of the grand jury to examine witnesses and deliberate in private dates back at least to the Earl of Shaftesbury's case in 1681. The common law concept of grand jury secrecy developed primarily from a need to protect the juror and the accused from the application of improper pressure by the Crown. . . .'' *Y. Kamisar, W. La Fave,* and *J. Israel, Modern Criminal Procedure*, Pt. 3, Ch. 15, 884 (4th ed. 1974).

The Supreme Court of the United States adopted the following reasons for the continuation of secrecy of grand jury proceedings:

"(1) To prevent the escape of those whose indictment may be contemplated, (2) to insure the utmost freedom of the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 fn. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

 Any effort to tamper with or obstruct the due administration of its function is reprehensible. Jurors and witnesses should be protected vigorously from outside influences. *See Caldwell v. United States*, 218 F.2d 370 (D.C. App. 1954). Any attempt to corrupt, influence, or tamper with the administration of justice has been condemned and proscribed by the legislature. The Colorado jury-tampering statute provides, in pertinent part:

"*Jury-tampering.* A person commits jury-tampering if, with intent to influence a juoror's vote, opinion, decision, or other action in a case, he attempts directly or indirectly to communicate with a juror other than as a part of the proceedings in the trial of the case."

The statute is also implemented by our grand jury rules, which provides:

"*Rule 6.2. Secrecy of Proceedings* — Witness Privacy

"All persons associated with a grand jury and its investigations or functions should at all times be aware that a grand jury is an investigative body, the proceedings of which shall be secret. Witnesses or persons under investigation should be dealt with privately to insure fairness. The oath of secrecy shall continue until such time as an indictment is made public, if an indictment is returned, or until a grand jury report is issued dealing with the investigation. Nothing in this rule shall prevent a disclosure of the general purpose of the grand jury's investigation by the prosecutor." Crim. P. 6.2 (1975 Supp.)

In this case, the trial judge, in considering a motion to dismiss the indictment, reviewed the transcript of the grand jury proceedings to determine if there was sufficient evidence before the grand jury to support the indictment. The dismissal here was predicated not only upon the failure of the indictment to charge an offense, but also upon the quantum of evidence before the grand jury.

We have declared on more than one occasion that the grand jury is the arbiter of probable cause and that the trial judge is not to measure or weigh the evidence before the grand jury. *People v. Moreno*, 176 Colo. 488, 491 P.2d 575 (1971); *People v. Clifford*, 105 Colo. 316, 98 P.2d 272 (1939). The trial court's review of the grand jury transcript to determine whether the evidence before the grand jury established probable cause is disapproved.[2]

The alleged acts of the defendant fall within the proscriptions of our penal statute. However, the indictment in this case failed to state a crime and did not square with the statute. The indictment returned against the defendant charged:

"THAT DONALD J. ZUPANCIC, between the 22nd day of September, A.D., 1974 and the 31st day of October, A.D., 1974, within the County of Pueblo and State of Colorado, with the intent to influence a juror's action in a case, to-wit: violate the oath of secrecy attendant to a Grand Juror, did knowingly, and unlawfully attempt directly and indirectly to

---

[2] The character of the evidence before the grand jury, as well as the quantum, is generally not a basis for attacking an indictment. *See United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ("[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (indictment based solely on hearsay upheld).

communicate with a juror other than as part of the proceedings in the trial of that case. . . ."

We said in *People v. Xericos*, 186 Colo. 21, 525 P.2d 415 (1974):

"The purposes of a criminal indictment by a grand jury are essentially twofold. First, it must give the defendant sufficient notice of the crime that has allegedly been committed so that a defense may be prepared. *Tracy v. People*, 65 Colo. 226, 176 P. 280 (1918). Second, it must define the acts which constitute the crime with sufficient definiteness so that the defendant may plead the resolution of the indictment as a bar to subsequent proceedings. *People v. Allen*, 167 Colo. 158, 446 P.2d 223 (1968). Accordingly, we have held in prior cases that *where the acts constituting the offenses are not described by the statute, an indictment merely reciting the statutory words is insufficient. Schraeder v. People*, 73 Colo. 400, 215 P. 869 (1923). We hold that this long-standing principle of law controls in this case. The result was a charge so vague as to prejudice the rights of the defendant." (Emphasis added.)

The multiple vagaries and ambiguous references in the indictment in this case leave unanswered questions of who (the name of the juror or the identity of the person as a grand juror), what, where, and how. To meet the requirements of the *Xericos* case, where the acts constituting the offense are not described by the statute, as in this case, the acts which constitute the crime must be set forth with enough specificity to give notice to the defendant.[3] For example, here the prosecution contends that the defendant attempted to induce "a grand juror" to disclose the names of the witnesses who appeared before the grand jury and their testimony. The indictment failed to disclose the prohibited conduct.

The judgment of the trial court is, therefore, affirmed.

MR. JUSTICE KELLEY dissents.

---

[3] *See* section 16-5-201, C.R.S. 1973 (requires inclusion in indictment of "the offense, the name of the person charged, and the time and place of committing the same, *with reasonable certainty*.") (emphasis added); Crim. P. 7 (a)(2) (prerequisites for technical sufficiency of indictment). A motion for a bill of particulars, Crim. P. 7(g), to clarify the indictment would, of course, have been inappropriate and inexpedient insofar as indictments may not be amended, except in minor technical matters, without resubmission to the grand jury. *See, e.g., Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); 1 C. Wright, *Federal Practice and Procedure (Criminal)* § 127 (1969). Moreover, a bill of particulars generally cannot save an insufficient indictment. As the Supreme Court said in *Russell v. United States, supra*:

"To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to serve. For a defendant would then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."

*See generally*, 1 C. Wright, *Federal Practice and Procedure (Criminal)* § § 125, 126 (1969).

MR. JUSTICE KELLEY dissenting:

I respectfully dissent. In my opinion the indictment here is sufficiently specific to comply with statutory requirements as well as the pronouncements of this court.

The mere fact that the conduct complained of coincides with the statutory language does not invalidate the indictment. In *Schraeder v. People*, 73 Colo. 400, 215 P. 869 (1923), we held that "where the statute specifies the act or acts constituting the offense, it is sufficient, generally, as to such act or acts, to follow the language of the statute." 73 Colo. at 402, 215 P. 869. Moreover, the majority fails to consider the applicable statute which not only codifies the holding in *Schraeder* but creates a presumption of validity for indictments couched in the language of the statute. Section 16-5-201, C.R.S. 1973, provides, in pertinent part:

"Every endictment or accusation of the grand jury shall be deemed *sufficient technically and correct which states the offense in the terms and language of the statute defining it*, or so plainly that the nature of the offense may be easily understood by the jury . . . ." (Emphasis added.)

The majority also fails to consider the applicable rule of criminal procedure, Crim. P. 7, the language of which is substantially the same as section 16-5-201, C.R.S. 1973.

Crim. P. 7(g) also sets forth a mechanism for adverse parties or the court to seek clarification of an apparently unclear though technically sufficient and correct indictment:

"(g) Bill of Particulars. The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made only within ten days after arraignment or such other time before or after arraignment as may be prescribed by rule or order. A bill of particulars may be amended at any time subject to such conditions as justice requires."

While I recognize that a bill of particulars cannot salvage an otherwise invalid indictment, *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the mechanism exists so that parties can clarify matters of a nonessential and nonprejudicial nature. *Bush v. United States*, 338 F.2d 400 (9th Cir. 1964) (indictment need not recite name of person to whom narcotics sold); *Young v. United States*, 288 F.2d 398 (D.C.Cir. 1961) (indictment need not state name of assault victim); *Mora v. People*, 172 Colo. 261, 472 P.2d 142 (1970) (information need not state name of purchaser of narcotics since essence of the crime is the illegal sale).[1]

The majority relies on *People v. Xericos*, 186 Colo. 21, 22, 525 P.2d 415, 415-16 (1974), where the defendant's indictment charged that he

---

[1] See note 2 *infra*.

"did act or engage himself as a pimp." The indictment was invalidated because it failed to relate with any specificity the act or acts which constituted the crime charged. In the present case, the indictment alleges specific actions, to-wit communications and attempted communications with the complaining witness with the intent to influence her actions by inducing her to "violate her oath of secrecy."

The majority concludes its opinion, however, with the statement that the indictment must fail because it "leave[s] unanswered questions of who, what, where and how." A fair analysis of the indictment shows that the "who, what, where and how" test set out by the majority is satisfied. The indictment in effect alleges that in the County of Pueblo (where) the defendant, within a specific nine day period, with the intent to influence a juror's action in a case by inducing the juror (who) to violate her oath of secrecy (what) did knowingly and unlawfully attempt to communicate with the juror (how).

My research indicates that the appropriate standard for review of the legal sufficiency of an indictment is not whether it answers the questions of who, what, where and how, but whether it (1) contains the elements of the offense intended to be charged and gives the defendant sufficient notice of the charge so that a defense may be prepared; and whether (2) "the *record* shows with accuracy to what extent he may plead a former acquittal or conviction," in the event other proceedings are taken against him for similar offenses. *Russell v. United States, supra* at 764, 82 S.C. at 1047, 8 L.Ed.2d at 251 (emphasis added); *accord People v. Xericos*, 186 Colo. 21, 525 P.2d 415 (1974).

The majority position is, in effect, that the indictment itself must be sufficient to bar any further prosecutions for the same offense. In support, the majority quotes the criteria for sufficiency of an indictment set out in *People v. Xericos, supra*:

"First, it must give the defendant sufficient notice of the crime that has allegedly been committed so that a defense may be prepared. Second, it must define the acts which constitute the crime with sufficient definiteness so that the defendant may *plead the resolution of the indictment* as a bar to subsequent proceedings."

186 Colo. at 22-23, 525 P.2d at 416 (citations omitted, emphasis added).

The language in *Xericos* is not inconsistent with the criteria set forth in *Russell v. United States, supra*, where the Supreme Court of the United States held that the indictment and the *record* together must be sufficient to act as a bar to further prosecution for the same offense. *Xericos* does not require that the indictment stand alone as a bar to further prosecutions. Rather, *Xericos* requires that a defendant be able to *"plead the resolution* of the indictment'' as a bar to subsequent prosecu-

tions. As such, the *Xericos* criteria direct a court, in assessing the resolution of an indictment, to review the record.[2]

*People v. Howe*, 178 Colo. 248, 496 P.2d 1040 (1972), decided by this court, held that the sufficiency of an indictment is not determined by whether the indictment alone will protect the accused against the possibility of double jeopardy. Rather, the court there held that the *judgment* was the bar. It is fundamental that "the extent of the judgment may be determined from an examination of the whole record." *Mora v. People, supra* at 265, 472 P.2d at 144. Consistent with *Howe, Mora,* and my interpretation of the holding in *Xericos* are the other recent decisions of this court.[3]

Accordingly, I would reverse the ruling of the trial court, and remand with directions to reinstate the indictment.

[2]*See* 1 *C.A. Wright, Federal Practice and Procedure Criminal,* § 125 (1969) and cases cited therein:
"It has long been the rule that the entire record of the proceedings, and *not the indictment or information alone,* may be referred to if there is a claim that a subsequent prosecution constitutes double jeopardy." (Emphasis added).

[3] *See, e.g. People v. Flanders,* 183 Colo. 268, 516 P.2d 418 (1973):
"an information is sufficient if it informs the defendant of the charges against him so as to enable him to prepare a defense and *plead the judgment* in bar of any further prosecutions for the same offense."
(Citations omitted, emphasis added); *People v. Gnout,* 183 Colo. 366, 517 P.2d 394 (1973) (information sufficient where defendant can plead judgment as bar to further prosecutions for same offense); *People v. Mazza,* 182 Colo. 166, 511 P.2d 885 (1973) (indictment sufficiently definite to inform defendant of charges and to enable him to plead the judgment as a bar to further prosecutions for same offense); *Mora v. People, supra* (information need not be sufficient to act as a bar to subsequent prosecution, since judgment constitutes the bar, and extent of judgment may be determined from examination of whole record). *Cf. Loggins v. People,* 178 Colo. 439, 498 P.2d 1146 (1972); *Gallegos v. People,* 166 Colo. 409, 444 P.2d 267 (1968).