The **PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Roy J. POLLARD, Defendant–Appellant.**

**No. 97CA1981.**

Colorado Court of Appeals,
Div. IV.

Feb. 3, 2000.

Certiorari Denied July 3, 2000.

Ken Salazar, Attorney General, Miles Madorin, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Janet Fullmer Youtz, Lakewood, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Roy J. Pollard, appeals the judgment of conviction entered on jury verdicts finding him guilty of four counts of theft, criminal impersonation, and a violation of the Colorado Organized Crime Control Act (COCCA). We affirm.

Acting through corporations in which he was the sole shareholder, defendant held himself out to be a financial consultant and promised at least thirteen individuals that he could secure loans for them. To obtain the loans, defendant entered into contracts on behalf of certain corporate entities with the victims pursuant to which the victims were charged a fee and were to be provided a portfolio business plan and every reasonable effort to obtain the required financing. However, no loans were obtained for any of the victims.

## I.

Asserting that the People failed to prove that he was part of an enterprise which had an existence and purpose distinct from him, defendant contends that he was improperly charged with violating COCCA and that the

evidence was insufficient to sustain his conviction. We disagree.

■ To determine a claim of insufficient evidence, we review the evidence presented in the light most favorable to the prosecution to ascertain whether a reasonable juror could conclude that the prosecution proved all elements of the charged offense beyond a reasonable doubt. An appellate court may not substitute its judgment for that of the jury and reweigh the evidence or the credibility of witnesses. *People v. Webster*, 987 P.2d 836 (Colo.App.1998).

■ The provisions regarding COCCA are set forth in § 18–17–101, et seq., C.R.S.1999. Section 18–17–104(3), C.R.S.1999, provides that it is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt. The "enterprise" and the "person" engaged in the racketeering activity must be different entities. *Ferris v. Bakery, Confectionery and Tobacco Union, Local 26*, 867 P.2d 38 (Colo.App.1993).

"Enterprise" means any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any charged union, association or group of individuals, associated in fact, although not a legal entity. Section 18–17–103(2), C.R.S.1999.

"Person" means any individual or entity holding or capable of holding a legal or beneficial interest in property. *See* § 18–17–103(4), C.R.S.1999.

Here, the sixth count of the information provides that defendant:

[w]as employed by and associated with an enterprise; to wit; Roy Jack Pollard as an individual . . .

The enterprise referred to in this count is an individual ROY JACK POLLARD, and the same individual d/b/a LEISURE INTERNATIONAL, INC., WALKING STICK, INC., BLACK MAGPIE, INC., AND OKANE FINANCIAL.

Evidence was presented distinguishing defendant from the enterprise including that defendant was an individual and conducted his business through four corporations of which he was the incorporator and sole shareholder: Leisure International; Walking Stick, Inc.; Black Magpie, Inc.; and Okane Financial Consultants, Inc. The contracts with the victims were made and prepared in the names of these corporations. Defendant also accepted checks and wire transfers made out to the corporations and opened bank accounts in their names.

The business plans or portfolios that were prepared for certain individuals were signed by him as president of Okane Financial Associates Consultants, Inc. In a letter printed on Okane Financial Associates Consultants, Inc. letterhead, defendant wrote to one of the victims and signed the letter as its president.

At trial, defendant testified that he did not make any commissions on the loans that were made, but the corporations did. He also admitted that in 1992 and 1993, he did not have any assets, but Okane Financial Consultants, Inc. did. Defendant further testified that he had six or eight employees and that, although he never made any portfolios, he oversaw them and did the final review. He also admitted that he was the sole stockholder of Okane Financial Consultants, Inc.

■ Incorporation results in the creation of a new legal entity with an identity separate and apart from the shareholders. *Micciche v. Billings*, 727 P.2d 367 (Colo.1986).

■ Because COCCA is patterned after the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, et seq. (1994), federal decisions construing RICO may be instructive upon similar issues arising under the state statute. *Floyd v. Coors Brewing Co.*, 952 P.2d 797 (Colo.App.1997), *rev'd on other grounds*, 978 P.2d 663 (Colo.1999).

■ When, as here, a separate entity is formed by the act of incorporation, the corporation constitutes an enterprise within the meaning of § 18–17–104(3), separate from the person engaged in the pattern of racketeering activity. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir.1992) (the only important thing is that the enterprise be

either formally (as when there is a corporation), or practically (as when there are other people working in the organization) separable from the individual); *McCullough v. Suter,* 757 F.2d 142 (7th Cir.1985) (a corporation constitutes an enterprise).

■ Further, we reject defendant's contention that COCCA was intended to apply to organized crime, not to individuals. *See People v. Chaussee,* 880 P.2d 749 (Colo.1994) (both COCCA and RICO impose criminal liability on persons who engage in certain prohibited activities).

Consequently, we conclude that defendant was properly charged under COCCA and that there is sufficient evidence in the record to support his conviction.

## II.

Defendant next contends that the trial court erred in not dismissing the charge under COCCA because the charge failed to allege a theft or any other crime. The charge, he asserts, is insufficient because it does not state that defendant took the money "without authorization, or by threat or deception" and does not allege any of the acts in the theft statute. We are not persuaded.

■ An information serves two vital purposes: 1) it provides the defendant with notice of the offense charged, as well as the factual circumstances surrounding the offense, so that the defendant can adequately defend himself or herself and 2) it protects the defendant from further prosecution for the same offense. The essential element requirement is satisfied if the language in the information tracks the statutory language. *People v. Williams,* 984 P.2d 56 (Colo.1999).

According to § 18–4–401(1), C.R.S.1999, a person can commit theft in a number of ways. These include when a person knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value....

Here, the amended information provided that:

The acts of racketeering activity referred to above include but are not limited to the commission and attempted commission of the following;

. . . .

## B. THEFT

On or about March 6, 1994, to March 17, 1994, did feloniously, unlawfully and knowingly take a thing of value, to wit; UNITED STATES CURRENCY of the value of Fifteen Thousand Dollars ($15,000.00) or more from [a person]. . . .

The information delineates twelve other incidents of theft in a similar fashion.

■ We conclude that the amended information properly alleges theft. It complies with § 18–4–401(6), C.R.S.1999, which, as pertinent here, provides that:

In every indictment or information charging a violation of this section, it shall be sufficient to allege that, on or about a day certain, the defendant committed the crime of theft by unlawfully taking a thing or things of value of a person or persons named in the indictment or information.

Further, defendant has failed to demonstrate and does not contend, that the information prevented him from defending against the COCCA charge or prejudiced him in any way. *See People v. Williams, supra* (defects in the form of an information do not require reversal unless the substantial rights of the defendant are prejudiced).

Thus, we conclude that the trial court did not err by not dismissing the COCCA charge.

## III.

Defendant next contends that the trial court denied him his right to a fair trial before a fully and properly instructed jury when it denied his request for an instruction defining the element of deception. We disagree.

■ The decision to provide a jury with additional written instructions, which properly state the law, is a matter within the trial court's sound discretion, and will not consti-

tute reversible error absent manifest prejudice or a clear showing of abuse of discretion. *People v. Bielecki*, 964 P.2d 598 (Colo.App. 1998).

As pertinent here, the jury was instructed that, in order to find defendant guilty of theft, it had to find that defendant knowingly obtained or exercised control over anything of value, by deception, with intent to permanently deprive the other person of the use or benefit of the thing of value.

Defendant tendered an instruction which provided that the crime of theft by deception requires proof that, in reliance upon misrepresentations by the defendant, the victim parted with something of value.

The trial court, however, refused the instruction reasoning that:

It appears it's just a restatement of the element. You can argue it, but I don't believe that it tells the jury anything in addition to what [it's] already been told, and there is not really a need to clarify it.

■ Defendant's tendered instruction correctly states the standard for proving theft by deception, *see People v. Warner*, 801 P.2d 1187 (Colo.1990). However, neither *People v. Warner* nor *People v. Terranova*, 38 Colo.App. 476, 563 P.2d 363 (1976), the cases from which the standard is drawn, requires that the jury be separately instructed about the standard. Both cases and the standard itself address the proof required to prove the offense and, as more fully set forth below, the evidence was sufficient to support the conviction.

Additionally, the jury was instructed in accordance with § 18–4–401(1)(a). *See People v. Williams*, 899 P.2d 306 (Colo.App.1995) (an instruction in the language of the applicable statute is usually sufficient to advise the jury of the nature of the offense).

Thus, we perceive no abuse of discretion.

### IV.

■ Relying on a clause in the contracts which informed the victims that there was no guarantee that financing would be obtained and other evidence, defendant contends that the evidence is insufficient to support a conviction for theft. In particular, he contends that the People failed to prove beyond a reasonable doubt that he was guilty of knowing deception. We reject this contention.

Here, the contract states that defendant's duties regarding the obtaining of financing are to be as follows:

To assemble and distribute a portfolio business plan, and to put forth every reasonable effort in assisting client to obtain the required financing as consultant.

One victim testified that he paid defendant $5,000, never received a portfolio, and was not contacted by any lender. Another testified that he paid defendant $5,800 with an understanding that he would receive a $10,000,000 loan, but never obtained any financing.

The victims further testified that defendant claimed to have a lending source in Hong Kong who provided him access to considerable funds and that he portrayed himself as a "conduit" for the transfer of money from Hong Kong to the United States. In order to secure loans, however, the victims had to pay defendant a fee to create a portfolio business plan and then present it to a lender overseas. None of the victims was ever provided a loan.

The record also reveals that defendant repeatedly told the victims that he had great expertise as a financial consultant and possessed great wealth. However, he testified that he had taken only two correspondence courses approximately forty years earlier, that he had filed bankruptcy at least twice, that he did not know when he had last filed a tax return, and that he did not tell his clients that his net worth was zero. He also admitted telling the victims that he had access to people who had millions of dollars and that he was supposed to have access to millions of dollars, but "it didn't happen."

Evidence was also presented that defendant did not contact anyone who could finance the transactions and that he spent his time in other countries sightseeing rather than pursuing financing. On one occasion he represented he had moved three and one-half billion dollars from Hong Kong to Switzer-

land, but when the victims appeared to collect their loans, no money was available.

Thus, we conclude that there was ample evidence in the record to support the defendant's convictions of theft.

## V.

We also reject defendant's final contention that the trial court erred in denying his post-conviction motion for a new trial without appointment of counsel or a hearing.

■ Crim. P. 33(c) provides that the motion for a new trial shall be in writing and shall point out with particularity the defects and errors complained of. However, Crim. P. 33 does not require a trial court to grant a hearing on a motion for a new trial. *People v. Eckert*, 919 P.2d 962 (Colo.App.1996).

■ Crim. P. 33(c) vests the trial court with discretion to grant a new trial in circumstances in which the entry of a judgment of acquittal or other relief would not be appropriate. *People v. Jones*, 942 P.2d 1258 (Colo. App.1996).

Here, after trial, defendant, *pro se*, filed a motion to set aside the verdict and requested a new trial based on the following: 1) a detective violated a court order requiring the prosecution to bring forth everything that had been taken from him thereby depriving him of documentation needed in his defense; 2) a motion to produce was never ruled upon; 3) a motion to suppress was never decided; 4) a police detective communicated with jurors; and 5) defendant's trial attorney made remarks in front of the jury concerning his desire to withdraw.

The trial court denied defendant's motion finding that no discovery violation had occurred. It also found that: 1) defendant and his counsel had been advised of the location of the materials; 2) defendant's request that certain documents be made available at trial was granted; 3) defendant abandoned his motion to suppress after withdrawing a guilty plea by failing to file a new motion; 4) any contact between the detective and the juror was inadvertent, and did not constitute misconduct or result in prejudicial conduct warranting a mistrial; 5) there was no evidence that the jury overheard remarks from defense counsel that counsel could not or would not give defendant a confident and qualified defense; and (6) that he was represented by effective counsel.

■ Initially, we note that, because the People did not object to the late filing of defendant's motion, the objection is deemed waived. *People v. Moore*, 193 Colo. 81, 562 P.2d 749 (1977) (by failing to object to trial court's hearing and deciding untimely new trial motion, prosecution waived right to raise such objection).

Here, the record reveals that the evidence removed from defendant's residence was available to defense counsel and that defense counsel visited the district attorney's office and used some of this evidence at trial.

As to defendant's motion to suppress, we agree with the trial court that defendant had abandoned the motion, was obligated to file another motion prior to trial, and cannot now complain of error. *See People v. Licea*, 918 P.2d 1109 (Colo.1996) (motion to suppress fruits of search should be filed prior to trial).

Further, on the issue of alleged improper communication with jurors, the officer testified that he did not engage the juror in any conversation and just acknowledged the juror's presence. The juror stated that he did not say anything about the case, but it never crossed his mind not to discuss the weather.

Thus, defendant has failed to allege, and the record does not reveal, any prejudice resulting from the communication between the detective and the juror. *See People v. Perryman*, 859 P.2d 263 (Colo.App.1993) (prejudice will not be presumed solely upon a showing of an improper communication between a juror and a third party).

We also reject defendant's contention that a new trial was warranted because he received ineffective assistance of counsel.

■ Although there is a preference for having ineffective assistance of counsel claims brought in Crim. P. 35(c) proceedings, *see People v. Thomas*, 867 P.2d 880 (Colo. 1994), the status of the record is sufficient to address defendant's limited contention.

To obtain relief on a claim of ineffective assistance of counsel, a defendant must first demonstrate that the acts or omissions of counsel fell outside the range of professionally competent assistance. A defendant must also affirmatively prove that he or she suffered prejudice as a result of counsel's deficient performance. *People v. Rodriguez*, 914 P.2d 230 (Colo.1996).

If a defendant claiming ineffective assistance of counsel fails to prove any prejudice from counsel's performance, a court need not consider whether the performance was deficient. *People v. Chambers*, 900 P.2d 1249 (Colo.App.1994).

Here, defendant alleges that he encountered significant difficulty working with counsel, but does not explain how he was prejudiced by counsel's representation. Further, although counsel attempted to withdraw from the case, defendant filed a *pro se* motion objecting to his withdrawal.

Consequently, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Accordingly, the judgment of conviction is affirmed.

Judge ROY and Judge VOGT concur.