The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Eric JAMES, Defendant–Appellant.

No. 99CA0568.

Colorado Court of Appeals, Div. II.

April 26, 2001.

Certiorari Denied Jan. 22, 2002.

and § 24–51–1105, C.R.S.2000.

**38**

Ken Salazar, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Law Firm of Douglas S. Joffe, Douglas S. Joffe, Theodore B. Peak, Denver, CO, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Eric James, appeals the judgment of conviction entered upon jury verdicts finding him guilty of 23 charges, including violation of the Colorado Organized Crime Control Act (COCCA), conspiracy to commit second degree burglary, forgery, theft, second degree burglary, criminal impersonation, theft by receiving, contributing to the delinquency of a minor, and a finding by the court that he is a habitual criminal. We affirm.

Defendant, an alleged former gang member, had become a counselor at a community center providing nighttime activities for youth. While working there, he came into contact with several young women, three of whom were minors. He recruited them to participate in a scheme to steal cash, computers, guns, and other merchandise using forged checks that he had stolen. Defendant's wife and others also participated in the scheme.

Many of the participants eventually pleaded guilty to charges related to their roles in the scheme and received minor sentences and immunity from further prosecution in exchange for their testimony in the case against defendant.

## I.

■ Defendant first contends the trial court erred when, during its remarks to the venire, it stated that defendant was in custody and was wearing a leg restraint security device. We disagree.

■ The presumption of innocence requires the garb of innocence. Every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent person, except as the necessary safety and decorum of the court may otherwise require. Thus, compelling a defendant to stand trial wearing identifiable prison clothing violates the right to wear the "garb of innocence." *Eaddy v. People*, 115 Colo. 488, 174 P.2d 717 (1946). Such a practice is inherently prejudicial. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

■ When a defendant appears manacled or restrained before a jury, however, reversible error results only if the restraints are unnecessary and prejudicial. *People v. Dillon*, 655 P.2d 841 (Colo.1982); *Hamrick v. People*, 624 P.2d 1320 (Colo.1981); *People v. Schlegel*, 622 P.2d 98 (Colo.App.1980).

Here, defendant was wearing a hidden leg restraint, and a sheriff's deputy was sitting near him during the court's remarks to the venire. The court stated:

> I would describe to you that the defendant is in custody, which means he has not posted a bond in this case. This is not evidence of the defendant's guilt. It does not change the prosecution's burden of proving the case. It does not change the burden of proof, that is, that the case needs to be proven beyond a reasonable doubt. It does not change the presumption that the defendant is innocent unless proven guilty.

> You may notice that the defendant limps. That means that he has a leg brace as a security device rather than some other restraint.

At the next break in the proceedings, defense counsel asserted that the court's comments were prejudicial and asked the court to replace the venire. The court denied the request, stating, "I think it's just easier to clarify that [defendant is in custody and restrained] rather than to somehow pretend something that we know is obvious."

We do not condone the court's clearly unnecessary comments regarding defendant's custodial status and his physical restraint. However, we note that they were couched within instructions regarding the need to favor defendant with the presumption of innocence and the prosecution's burden of proof.

*See United States v. Milner,* 962 F.2d 908 (9th Cir.1992) (curative instruction that custody was no indication of guilt sanitized court's improper voir dire comments regarding defendant's custodial status and security risk).

In addition, defense counsel had not yet conducted voir dire of the jury panel when the court made its comments. Counsel could have queried the panel regarding any potential prejudice the court's comments had created. Defense counsel did not do so, and we find no evidence of actual prejudice in the record. Indeed, we note that the jury ultimately acquitted defendant of six of the charges.

Further, the comments were made only once, defendant was dressed in street clothes, and the restraint was hidden beneath his clothing. Therefore, unlike a situation in which a defendant's wearing of prison garb or visible restraints is a constant reminder that he or she is a prisoner, the comments here were not likely to have had a lasting effect upon the jury, and therefore were not inherently prejudicial. *See Estelle v. Williams, supra; see also Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (presence of extra uniformed guards at trial not so inherently prejudicial as to deny defendant right to fair trial); *cf. People v. Rogers,* 800 P.2d 1327 (Colo.App.1990) (court's practice of personally escorting child witness to stand inherently prejudicial to accused, despite curative instruction).

Hence, we conclude the trial court's comments and its failure to dismiss the venire did not constitute reversible error.

■ To the extent defendant contends that the trial court erred in requiring him to wear a restraint, we reject the contention.

■ Restraints are permitted when a court determines, in its discretion, that they are necessary to ensure that a defendant remains in custody, will not endanger court personnel or others in the courtroom, and will not disrupt the trial. Only use of restraints that is both unnecessary and prejudicial constitutes reversible error. *See People v. Melanson,* 937 P.2d 826 (Colo.App.1996).

Here, even if we assume, without deciding, that a restraint was unnecessary, or that the trial court erred in failing to make the necessary findings to justify restraint, *see Lucero v. Lundquist,* 196 Colo. 95, 580 P.2d 1245 (1978), as noted above, we conclude that the use of restraints did not prejudice defendant. Accordingly, we find no reversible error.

## II.

Defendant asserts that the trial court erred by berating defense counsel within the hearing of the jury and by improperly terminating cross-examination of a witness. We disagree.

## A.

■ Defendant first contends the trial court erred in accusing defense counsel of lying to the court during cross-examination of a prosecution witness. We are not persuaded.

■■ A defendant has the right to cross-examine a witness regarding a plea agreement to establish possible bias and motive for testifying. However, the trial court has a duty to ensure that the interrogation of a witness and presentation of evidence is effective for ascertaining the truth. CRE 611(a). Therefore, the trial court has discretion to preclude cross-examination on aspects of a plea agreement that are irrelevant, immaterial, or misleading. *See* CRE 402, 403, 611(b); *Merritt v. People,* 842 P.2d 162 (Colo.1992); *People v. Montoya,* 942 P.2d 1287 (Colo.App. 1996).

■ Absent an abuse of discretion, a trial court's decision concerning the scope of cross-examination will not be disturbed on appeal. *People v. Raffaelli,* 647 P.2d 230 (Colo.1982); *People v. Marion,* 941 P.2d 287 (Colo.App.1996).

■ A trial court also has a duty to exercise restraint in its conduct and words so as to maintain an impartial forum. However, acts that merely cause disappointment, discomfort, or embarrassment to counsel in the presence of the jury, without more, are rarely prejudicial. Such comments and conduct

are grounds for reversal only if they are so far removed from requisite impartiality as to deny a defendant the right to a fair trial. *People v. Coria,* 937 P.2d 386 (Colo.1997).

Here, a witness who had been a participant in the criminal scheme admitted on defense cross-examination that he had pleaded guilty to only one of three felony charges and that he had been given a minor sentence. He also acknowledged that he had received immunity from further prosecution in exchange for his testimony. Intending to further call into question the witness' motive for testifying, defense counsel began a line of questioning to demonstrate that, if the witness had not entered into a plea agreement, he could have been convicted of three felonies and then prosecuted as a habitual offender.

As defense counsel knew, the witness had been convicted of only one felony arising from this scheme and had no previous felony convictions. Hence, he was not subject to habitual criminal prosecution. Thus, it was misleading for defense counsel to pursue questioning that suggested otherwise. Accordingly, the trial court acted within its discretion in prohibiting such questions.

Further, although the trial court's choice of words could have been better, the court did not overstep the bounds of required judicial restraint. As the court later told defense counsel in chambers, counsel's statements and questions regarding the witness' potential prosecution as a habitual criminal were obviously misleading. *See People v. Coria, supra* (court's comment about defense counsel knowingly and improperly interrupting the flow of the prosecutor's closing argument should not have been made but did not deny defendant a fair trial).

Moreover, the court's subsequent instruction to the jury that exchanges between the court and counsel were not evidence also blunted any possible prejudice that the court's choice of words may have caused.

### B.

■ Defendant also asserts the trial court erred when it terminated cross-examination of the witness. We find no reversible error.

■ A trial court may terminate cross-examination altogether if it is clear that further testimony would not advance the truth-seeking function of the trial. *See* CRE 611(a)(1); *United States v. Sanders,* 962 F.2d 660 (7th Cir.1992).

■ Even if a trial court improperly denies a defendant the opportunity to cross-examine a witness for bias, such error is not grounds for reversal if, assuming that the damaging potential of the cross-examination had been fully realized, a reviewing court can say that the error was harmless beyond a reasonable doubt. In making this determination, a reviewing court considers the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Vega v. People,* 893 P.2d 107 (Colo.1995).

Defense counsel here persisted in questioning the witness about potential habitual criminal prosecution despite the court's repeated directions to move on to another topic. Finally, after the court told counsel either to ask a different question or sit down, the court apparently thought counsel had stated he was finished with cross-examination. The court then stated "you're done." Thereafter, the court asked for redirect examination from the prosecution.

Later, in chambers, defendant moved for a mistrial or to have all of the witness' testimony stricken, asserting that the court had erred in terminating cross-examination. Denying the motion, the court stated that it had heard counsel say he was finished with cross-examination. Counsel asserted, correctly, that he had indicated he was not finished. He further asserted that, had he been given the opportunity for further cross-examination, he would have questioned the witness regarding contradictory statements the witness had made to police when first arrested.

The record demonstrates that the trial court misheard defense counsel. Even so, we fail to see how further cross-examination regarding the witness' motives or credibility

would have made any difference. Defendant had already established bias by eliciting testimony that the witness had received a minor sentence for his felony conviction and immunity from further prosecution if he agreed to testify against defendant. And, as to defense counsel's proffered questions regarding the witness' conflicting statements to police, we note that the witness had already acknowledged on the stand that he had given a bogus story to the police upon his arrest. Further, police officers themselves testified as to the witness' statements to them. Therefore, further cross-examination would not have advanced materially the truth-seeking function of the trial.

Moreover, five other witnesses testified concerning this particular charge, and two other witnesses corroborated most of this witness' testimony.

Thus, the evidence against defendant on this charge was overwhelming, and, therefore, the court's termination of cross-examination based on its mistaken belief that defense counsel was finished with cross-examination was harmless beyond a reasonable doubt.

### III.

■ Defendant contends that the trial court demonstrated bias against him because, although the court prohibited improper prosecution cross-examination, it offered no disparaging comments akin to those it had made to defense counsel. We disagree.

■ A defendant asserting bias of a trial judge must establish that the judge had a substantial bent of mind against him or her. Speculative statements and conclusions are insufficient to satisfy the burden of proof. *People v. Coria, supra; People v. Drake,* 748 P.2d 1237 (Colo.1988).

In support of this assertion, defendant directs us to two instances in which his objections to the prosecution's cross-examination of a defense witness were sustained. Defendant asserts that he received disparate treatment from the court simply because the court did not respond as vociferously in these instances as it had in dealing with defense counsel.

Such meager differences are matters of mere speculation and do not demonstrate judicial bias. Hence, we reject defendant's assertion.

### IV.

We also reject defendant's next assertion that the court erred in admitting hearsay statements and also failed to require the prosecution to establish a proper foundation for such evidence.

### A.

■ Defendant first contends that the court improperly allowed the introduction of hearsay testimony that he had illegally used checks involving a victim named "Jacqueline," although he was not charged with any crimes connected to such a victim or her checks. We disagree.

A statement made by a party is not hearsay when offered against the party making it. CRE 801(d)(2)(A); *People v. Meier,* 954 P.2d 1068 (Colo.1998).

■ Evidence of other offenses or acts that is integral to the criminal episode or transaction with which a defendant is charged is *res gestae* evidence. If it is relevant, and its probative value is not substantially outweighed by the danger of unfair prejudice, such evidence is admissible to provide the fact finder with a full understanding of the events surrounding the crime. *People v. Quintana,* 882 P.2d 1366 (Colo.1994); *People v. Agado,* 964 P.2d 565 (Colo.App.1998).

Here, the prosecution presented evidence that defendant had asked the witness, a minor at the time of the offense, to participate in the check-cashing scheme. The witness testified that defendant had given her a false birth certificate in the name of "Jacqueline" with which she had obtained a false identification card. She also stated that it was defendant's idea that she cut her index finger with a razor blade to disguise her fingerprint when obtaining the identification card.

The witness was testifying to defendant's own statements to her. Consequently, the statements were not hearsay. Further, al-

though the statements did not relate to any charge of theft or forgery against defendant, they were evidence integral to the charges of conspiracy and contributing to the delinquency of a minor and, given the large body of similar evidence against defendant, posed no risk of unfair prejudice. Therefore, the statements were admissible.

## B.

■ Defendant next asserts the trial court erred in allowing the prosecution to introduce numerous alleged co-conspirators' statements without establishing the requisite evidentiary foundation. We disagree.

■ The statement of an opposing party's co-conspirator made during the course and in furtherance of a conspiracy is not hearsay. CRE 801(d)(2)(E). However, to lay an adequate foundation, the proponent must demonstrate to the court by a preponderance of the evidence that the opposing party and the declarant were members of a conspiracy and that the declarant's statement was made during the course and in furtherance of the conspiracy. *People v. Montoya*, 753 P.2d 729 (Colo.1988); *People v. Mayfield–Ulloa*, 817 P.2d 603 (Colo.App.1991).

■ Although it is preferable that the trial court decide the admissibility of such evidence before its presentation to the jury, a trial court is not bound by the rules of evidence in determining issues of admissibility, except when the existence of a privilege is at issue. Therefore, unless a party claims a privilege, the trial court may determine admissibility based solely upon the out-of-court statement of the alleged co-conspirator. However, before the close of trial, some other evidence must be admitted, independent of the alleged co-conspirator's statement, establishing that the opposing party and the declarant were members of the conspiracy. CRE 104(a), 801(d)(2); *People v. Montoya, supra.*

Here, defendant challenges ten out-of-court statements as alleged hearsay. However, the persons to whom the statements were attributed were members of the conspiracy, and the statements were made in furtherance of the conspiracy. Further, at least two other persons corroborated each alleged hearsay statement. In fact, all but one of the persons who made the out-of-court statements themselves testified at trial and confirmed their roles in the conspiracy.

Hence, the trial court did not err in admitting the statements.

## V.

■ Defendant contends that all of the "irregularities" previously asserted, even if not sufficient individually to warrant reversal, cumulatively demonstrate that the trial court had a negative bent of mind against him and his counsel such that he was denied a fair trial. We disagree.

■ Numerous irregularities, each of which standing alone is insignificant, may, when taken together, so affect the substantial rights of a defendant as to require reversal. *People v. Davis*, 794 P.2d 159 (Colo. 1990).

■ Repeated statements by the trial court that demonstrate irritation and intolerance toward a defendant or his counsel, cumulatively, can indicate that the court held such a negative bent of mind against the accused as to constitute judicial bias and thus deny the defendant a fair trial. *People v. Coria, supra; see People v. Vialpando*, 809 P.2d 1082 (Colo.App.1990).

Here, even taken together, any irregularities are insufficient to demonstrate that the court had such a negative bent of mind toward defendant. We perceive only three instances in which the court may have acted in an irregular fashion, but only the court's admonishment for lying demonstrated that the court was irritated with defense counsel. The court's belief that defense counsel was finished with cross-examination was a simple mistake and reveals no animus toward defendant. Finally, the court's unnecessary statement to the jury regarding defendant's custody and restraint status revealed that the court was concerned, albeit in a misplaced fashion, that the jury fairly reach a decision despite defendant's status.

We conclude that these irregularities are too few in number and severity to demonstrate that defendant was denied a fair trial.

## VI.

Defendant contends the trial court failed properly to instruct the jury on key elements of the COCCA racketeering charge. We disagree.

■ An elemental jury instruction that tracks the language of the statute is adequate if the language is clear. *Leonardo v. People*, 728 P.2d 1252 (Colo.1986); *People v. Wilson*, 791 P.2d 1247 (Colo.App.1990). If, however, the statute contains terms that require definition, the court must provide an additional clarifying instruction, and the failure to give such an instruction is error. *See People v. Fichtner*, 869 P.2d 539 (Colo.1994).

■ However, when a trial court omits or misdescribes an element of an offense, that error is nevertheless subject to constitutional harmless error or plain error analysis. *Griego v. People*, 19 P.3d 1 (Colo.2001).

■ When, as here, a defendant challenges a jury instruction for the first time on appeal, we undertake review for plain error. Under this standard, we may reverse only if we can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. Concerning instructions, the record must reveal that there is a reasonable possibility that the erroneous instruction contributed to the defendant's conviction. Crim. P. 52(b); C.A.R. 35(e); *People v. Eppens*, 979 P.2d 14 (Colo.1999); *Bogdanov v. People*, 941 P.2d 247 (Colo.1997).

Nevertheless, if there is overwhelming evidence to support the conviction, we will not reverse it under a plain error standard. *People v. Fichtner, supra*.

## A.

■ Defendant first argues that, although the court's instruction on the racketeering charge tracked the language of the applicable statutes, the trial court erred in including an "individual" in its definition of "enterprise." We disagree.

Sections 18–17–103(3) and 18–17–104(3), C.R.S.2000, make it a crime for an individual to commit at least two racketeering crimes, such as theft, forgery, or burglary, in furtherance of his or her association with an enterprise.

■ An enterprise must consist of at least one other person or entity besides the defendant. *People v. Pollard*, 3 P.3d 473 (Colo.App.2000); *Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38 (Colo.App.1993).

■ We note initially that defendant misconstrues COCCA to the extent that he asserts that a racketeering conviction can be predicated only upon crimes that a defendant commits with at least one other person or entity in the enterprise. A defendant, either alone or with others in the enterprise, need only have committed predicate acts that are related to the conduct of the enterprise. *Cf. People v. Chaussee*, 880 P.2d 749 (Colo.1994); *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363 (Colo.App.1993).

Substantially following the language of §§ 18–17–103(2), 18–17–103(3), and 18–17–104(3), C.R.S.2000, the court here instructed the jury that it must find that defendant had participated in at least two acts of racketeering activity while he was "employed by or associated with an enterprise," defined as "any individual, sole proprietorship ... or other legal entity, association, or group of individuals, associated in fact, although not a legal entity."

We do not agree with defendant that the court erred in instructing the jury using the language of the statute. However, we do agree that, as it is used in the statute defining enterprise, the meaning of "individual" is unclear. Under the definition, the jury could have believed that defendant alone constituted the enterprise. Therefore, in this instance, the court should have given the jury an additional instruction stating that the enterprise must have included at least one person or entity besides the defendant.

However, this omission was not plain error. Throughout trial, the prosecution presented evidence that defendant had acted to forward the activities of an enterprise other than just himself. The evidence was overwhelming that the enterprise consisted of different persons at various times, but that it always included at least defendant and his wife. Even when defendant acted alone, as when he burglarized a car dealership and stole checks, it was to further the check forgery and theft activities of the enterprise. Finally, it was never defendant's theory of the case that he could not be convicted of racketeering because he acted alone; rather, he asserted that his wife and another person ran the enterprise.

Therefore, given the record as a whole, there is no reasonable possibility that the jury based its racketeering conviction upon a finding that defendant alone constituted the enterprise. Consequently, we reject defendant's argument.

### B.

Relying on federal caselaw interpreting the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. (1994), upon which COCCA was modeled, defendant argues the trial court erred in failing to instruct the jury concerning additional nonstatutory elements required for finding the existence of an enterprise. We disagree.

Federal courts have held that the RICO statutory definition of "enterprise" is incomplete. Federal caselaw requires that an enterprise must: (1) be an ongoing organization; (2) operate as a continuing unit; and (3) be separate and apart from the pattern of activity in which it engages. *See United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United States v. Pelullo*, 964 F.2d 193 (3d Cir.1992).

Defendant contends that the definition of "enterprise" under COCCA, like that in RICO, is incomplete. Accordingly, he asserts that the trial court should have instructed the jury on additional elements, similar to those required in RICO cases, for finding the existence of an enterprise.

However, in *People v. Chaussee, supra*, the court was called upon to determine whether federal judicial construction of the RICO term "pattern of racketeering activity" should be applied to COCCA. The court concluded that crucial differences between the RICO and COCCA definitions of this term precluded application of federal caselaw. The court determined that the language of the RICO definition implied that something beyond the plain words of the statute was required to show a pattern of activity, whereas COCCA's subtly different definition was self-contained.

Of particular import to the court was the General Assembly's use of the word "means" in defining "pattern of activity." The court found that the use of this word indicated a legislative intent to limit the requirements for a pattern of activity exclusively to those explicit in the statute. *People v. Chaussee, supra*.

Here, even more marked variations differentiate the RICO and COCCA definitions of the term "enterprise." Under RICO, " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (1994). However, COCCA states that, " 'Enterprise' means any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any chartered union, association, or group of individuals, associated in fact although not a legal entity, and shall include illicit as well as licit enterprises and governmental as well as other entities." Section 18–17–103(2).

Thus, RICO defines "enterprise" by stating what it "includes," a word that normally operates to extend rather than limit. *See Lyman v. Town of Bow Mar*, 188 Colo. 216, 533 P.2d 1129 (1975); *People v. Pipkin*, 762 P.2d 736 (Colo.App.1988). COCCA, on the other hand, defines "enterprise" by stating what it "means," which, under *People v. Chaussee, supra*, is a word of limitation. Further, the COCCA definition of "enterprise" is more detailed than that contained in RICO. Thus, while the term "enterprise" under RICO may be open to judicial construction and expansion, we conclude the General

Assembly intended that the COCCA definition of "enterprise" be complete.

Accordingly, we decline to impose additional requirements for proof of the existence of an enterprise. These proposed requirements are beyond those mandated by the explicit language of our statute. Hence, the trial court did not err in failing to instruct the jury on additional elements for finding the existence of an enterprise.

## VII.

■ Defendant next contends the trial court erred in allowing amendment of substantive elements of the indictment without resubmitting the indictment to the grand jury. We disagree.

Crim. P. 6.8(a), dealing with amendment of an indictment, provides in pertinent part:

At any time before or during trial, the court may, upon application of the people and with notice to the defendant and opportunity for the defendant to be heard, order the amendment of an indictment with respect to defects, errors, or variances from the proof relating to matters of form, time, place, and names of persons when such amendment does not change the substance of the charge, and does not prejudice the defendant on the merits.

Here, on the first morning of trial, before voir dire, the trial court allowed the prosecution to amend four counts of the indictment to correct the dates of the offenses. In asserting the need for the amendment, the prosecution explained that the errors were all typographical and showed the court supporting exhibits that reflected the correct dates for each of the four counts.

Relying upon *People v. Thimmes*, 643 P.2d 780 (Colo.App.1981), defendant argues that a superseding indictment, rather than an amendment, was the correct procedure, because the prosecution had had plenty of time to amend. We conclude that such reliance is misplaced.

In *Thimmes*, the indictment upon which the defendant was convicted was held to be insufficient because it specified no dates whatsoever, and a statute of limitation may have barred the prosecution. Here, the prosecution merely amended dates to reflect the dates specified in exhibits that were part of the evidence. Defendant had received copies of these exhibits long before trial.

To the extent that defendant contends the amendment was a matter of substance and not form, we reject that contention.

■ When the time or date of commission of the offense is not a material element of the charged crime, amendment of those terms does not effect a substantive change. *See Commonwealth v. Iacovelli*, 9 Mass.App. Ct. 694, 403 N.E.2d 1204 (1980) (in prosecution against government official for soliciting thing of value in return for being influenced to perform official act, changing date of offense at trial was not a substantive change to the indictment); *People v. O'Connor*, 240 A.D.2d 764, 660 N.Y.S.2d 140 (1997) (inasmuch as time was not a material element of crime of scheming to defraud, the two months that were added to the time span alleged in the indictment so as to reflect the evidence presented at trial related solely to the form of the indictment, and not its substance); Annot., *Power of Court to Make or Permit Amendment of Indictment with Respect to Allegations as to Time*, 14 A.L.R.3d 1297 (1967) (general rule is that, where time is not of the essence of the offense charged, an erroneous or defective allegation as to time of commission of crime is a matter of form, unless amendment creates change in offense or adds an offense).

Here, none of the charged offenses makes the date or time of commission of the offense a material element. *See* §§ 18–5–113(1)(d) and 18–5–113(1)(e), C.R.S.2000 (criminal impersonation); § 18–5–102(1)(e), C.R.S.2000 (forgery); and §§ 18–4–401(1)(a) and 18–4–401(1)(b), C.R.S.2000 (theft). Nor was there a change or addition of an offense. Accordingly, the amendments were not substantive.

Defendant also argues that he was prejudiced by the amendments. We disagree. Defendant did not raise a statute of limitation concern, nor did he claim an alibi for the amended dates. And, we can discern no other prejudice from the record.

Concerning defendant's assertion that the amendment brought two of the counts within a ten-year span following his prior felony convictions and thus allowed his prosecution for being a habitual criminal, we also reject that contention.

Trial on the habitual criminal count occurred three months following defendant's conviction here, giving him more than adequate time to prepare a defense. *Cf. People v. Martinez*, 18 P.3d 831 (Colo.App.2000) (amendment of indictment to add habitual criminal counts had no effect on substance because it did not charge defendant with an additional offense).

## VIII.

■ Defendant next contends the trial court erred in allowing his wife to testify despite his assertion of spousal immunity. We disagree.

Communications between a husband and wife are generally inadmissible against either spouse, absent the consent of the spouse against whom the communications are offered. Section 13–90–107(1)(a), C.R.S.2000. However, under an exception to this rule, such communications are not privileged if made for the purpose of aiding the commission of a future crime or of a present continuing crime. Section 13–90–107(1)(a)(III), C.R.S.2000.

Defendant asserts that his wife testified to statements he made to her about past criminal activity; therefore, the exception does not apply. However, the record reveals that defendant's wife testified concerning statements that defendant made to her at the time the two of them were actively engaged in an ongoing pattern of criminal activity from which defendant's COCCA conviction and many of defendant's forgery and theft convictions later arose. That defendant told his wife about breaking into a car dealership after the burglary and after he had stolen checks does not change the result. Defendant made the statements for the purpose of obtaining his wife's aid in the commission of the check forgery and theft schemes that were then ongoing. *Cf. People v. Fox*, 862 P.2d 1000 (Colo.App.1993) (letters that defen-

dant wrote to spouse after the crime but before trial admissible because they revealed intent to tamper with witnesses). Thus, the statements were admissible.

## IX.

■ Defendant contends the trial court erred when it denied him access to police gang files concerning himself and prosecution witnesses. We disagree.

■ The determination whether to order disclosure of potential evidence is committed to the sound discretion of the trial court, and the court's exercise of that discretion is entitled to strong deference. *Corbetta v. Albertson's, Inc.*, 975 P.2d 718 (Colo.1999); *People v. Vigil*, 729 P.2d 360 (Colo.1986).

Crim. P. 16(I)(a)(2) provides for disclosure of exculpatory evidence:

> The prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor.

■ Exculpatory evidence includes evidence that bears on the credibility of a witness the prosecution intends to call at trial. *People v. District Court*, 793 P.2d 163 (Colo.1990).

Upon request, the trial court may conduct an in camera review of evidence to determine whether it is discoverable. Crim. P. 16(III)(f); *see People v. Walker*, 666 P.2d 113 (Colo.1983); *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980).

Here, contending that information in the police gang files would exculpate him and cast doubt on the credibility of 20 prosecution witnesses, defendant moved for discovery of his Denver police department gang file and issued subpoenas for the gang files on the witnesses. Upon the prosecution's objection to discovery, and the City and County of Denver's motion to quash the subpoenas on grounds that the gang files were privileged intelligence information obtained and filed by Denver, the trial court conducted an in camera review of all of the files. Adopting the procedure described in *Martinelli v. District*

*Court, supra,* the court balanced the interests of the parties and declined to disclose the files to defendant, finding that defendant's interests did not overcome Denver's interests in the confidentiality of the records. *See People v. James,* 5 P.3d 328 (Colo.App. 2000).

We perceive no abuse of discretion in the trial court's determination. Our review of the sealed information reveals that the information was not likely to have exculpated defendant or have provided impeaching material concerning prosecution witnesses. Further, revealing the gang files of prosecution witnesses was likely to have compromised Denver's legitimate interests in police intelligence and breached the legitimate privacy rights of individuals. Therefore, the trial court did not abuse its discretion in refusing to order disclosure.

The judgment is affirmed.

PLANK, J., concurs.

JONES, J., concurs in part and dissents in part.

Judge JONES concurring in part and dissenting in part.

I respectfully dissent to part VII of the opinion. I reluctantly concur with part I of the opinion, perceiving that the trial court's comments, while unnecessary and ill-advised, do not constitute reversible error.

I agree with defendant that the trial court erred in granting the prosecution's motion to amend the grand jury indictment on the first day of the trial. I incorporate here the views I expressed in my dissenting opinion in *People v. Valdez,* 928 P.2d 1387, 1393 (Colo.App. 1996).

While Crim. P. 6.8(a) and 6.8(b) allow for amendment of an indictment under certain circumstances, no such amendment may be made that has the effect of prejudicing the defendant on the merits of the case, and no indictment may be amended as to the substance of the offense charged. *Sawyer v. People,* 173 Colo. 351, 478 P.2d 672 (1970). An indictment wrongfully amended by the trial court represents the substitution of the court's judgment for that of the grand jury

and, thus, does not properly charge a crime. *People v. Zupancic,* 192 Colo. 231, 557 P.2d 1195 (1976). Such an insufficient indictment does not subject the defendant to the jurisdiction of the trial court. *People v. Westendorf,* 37 Colo.App. 111, 542 P.2d 1300 (1975).

Here, I believe that the trial court allowed amendments to the indictment that were substantive and prejudicial.

The date in count 9 was changed from January 18, 1996, to April 18, 1996. That in count 10 was changed from April 26, 1997, to April 26, 1996, as was the date charged in count 11.

The evidence on which the prosecution based its motion to amend these dates was before the grand jury, which could have charged the "amended" dates if it had so chosen. The periods of time defined by the original dates and the amended dates are significant, and it should not be presumed that the original dates only represent scrivener errors in the indictment. In short, these are substantial changes, under the circumstances of this case and, therefore, prejudicial. *See People v. Zupancic, supra.*

The changes made to count 19 of the indictment expanded the alleged time the crime was committed from one day, January 9, 1997, to several days, between January 3 and 9, 1997. The grand jury may be presumed to have been aware of evidence that could lead one to believe the offense occurred over several days, and yet it returned an indictment charging the offense on only one of those days.

The prosecution thought to speak for the grand jury by seeking to amend the time of the offenses charged in the specified counts. This was not proper, for it expanded the indictment in a way that only the grand jury itself can do. *See People v. Zupancic, supra* (court may not substitute its judgment for that of the grand jury). This broadening of the indictment constituted substantive changes and is *per se* reversible error if allowed, as here. *See Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *see also United States v. Wright,* 932 F.2d 868 (10th Cir.1991); *People v. Simmons,* 973 P.2d 627 (Colo.App.1998).

Furthermore, in allowing the amendments to the indictment on the day of trial, almost a year after the indictment was reported out of the grand jury, the trial court increased the prejudice to defendant, because defense counsel had no time properly to prepare defenses concerning the amended indictment, and counsel's motion for continuance was denied.

Accordingly, I would reverse the judgment as to the amended counts and remand the cause with directions to vacate the convictions and sentences as to those counts, and to reinstate the original counts of the indictment for further proceedings.